1  Henry C. Bunsow (SBN 60707)
   bunsowH@howrey.com
2  K.T. Cherian (SBN 133967)
   cherianK@howrey.com
3  Robert Kramer (SBN 181706)
   kramerR@howrey.com
4  HOWREY LLP
   525 Market Street, Suite 3600
5  San Francisco, California  94105
   Telephone:  (415) 848-4900
6  Facsimile:  (415) 848-4999

7  Attorneys for Defendant
   LITEPANELS, LLC

8

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12  SWIT ELECTRONICS CO., LTD,        Case No. C-07-02645 JSW
                                      Jury Trial
13              Plaintiff,
                                      **LITEPANELS, LLC'S MOTION TO
14     vs.                            DISMISS OR TRANSFER VENUE**

15  LITEPANELS, LLC,                  Hearing Date:   July 20, 2007
                                      Time:
16              Defendant.            Judge:          Hon. Jeffrey S. White
                                      Courtroom:      2, 17th Floor
17

18

19  TO PLAINTIFF AND ITS COUNSEL OF RECORD:

20         PLEASE TAKE NOTICE that on July 20, 2007, at 9:00 a.m. or as soon thereafter as the matter

21  may be heard in the above Court, located at 450 Golden Gate Avenue, San Francisco, California,

22  before the Honorable Jeffrey S. White, United States District Court, Northern District of California,

23  Defendant Litepanels, LLC ("Litepanels") will move the Court to dismiss this action or, in the

24  alternative, transfer this action to the Eastern District of Texas.  This motion is based upon the

25  Declarations of Ken Fisher, Rudy Pohlert, and Robert Kramer dated June 15, 2007; the complete

26  records and files of this action; the arguments of counsel; and such additional evidence as the Court

27  may consider.

28

1         Pursuant to Federal Rule of Civil Procedure 12(b)(3), Defendant respectfully requests that this

2    Court enter an order dismissing this action for improper venue.  In the alternative, Defendant

3    respectfully requests that this Court enter an order transferring this action to the Eastern District of

4    Texas pursuant to 28 U.S.C. §§ 1404 or 1406.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3  I.    INTRODUCTION ............................................................................................................. 1

4  II.   ISSUES TO BE DECIDED ............................................................................................ 2

5  III.  STATEMENT OF FACTS ............................................................................................. 3

6        A.    The Parties. ......................................................................................................... 3

7        B.    Swit's Patent Infringement And Litepanels' Cease And Desist
8              Letters. ................................................................................................................. 3

    IV.   ARGUMENT ................................................................................................................... 5
9
         A.    Declaratory Plaintiff Selected an Improper Venue To Resolve This
10             Dispute. ................................................................................................................ 5

11       B.    Dismissal or Transfer Is Proper Under 28 U.S.C. 1406(a) ............................... 6

12       C.    Alternatively, Transfer Is Proper Under 28 U.S.C. 1404(a) ............................. 6

13             1.    The Texas Court Has Personal Jurisdiction Over Swit And
                     Is Therefore An Appropriate Transferee District Under
14                   1406(a) and 1404(a) ................................................................................ 6

15                   a.    Litepanels' *Prima Facie S*howing Of Swit's
                           'Minimum Contacts' With Texas Defeats Swit's
16                         Motion To Dismiss For Lack Of Personal
                           Jurisdiction. ................................................................................. 7
17
                     b.    Swit Has "Minimum Contacts" in the State of
18                         Texas. ........................................................................................... 8

19             2.    "Fair Play and Substantial Justice" Support Jurisdiction. ..................... 9

20       D.    Convenience Favors Transfer To The Eastern District Of Texas ................... 10

21       E.    The Interests Of Justice Favor Transfer To The Eastern District Of
22             Texas. ................................................................................................................. 10

         F.    Judicial Economy Favors A Change In Venue ................................................ 12
23
         G.    No Case In Controversy Regarding U.S. Patent No. 7,140,742. ..................... 14
24
    V.    CONCLUSION ............................................................................................................. 14
25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3D Sys., Inc. v. Aarotech Labs., Inc.,*
    160 F.3d 1373 (Fed. Cir. 1998) .................................................................................7

*Abrams Shell v. Shell Oil Co.,*
    165 F. Supp. 2d 1096 (C.D. Cal. 2001) .....................................................................6

*Akro Corp. v. Luker,*
    45 F.3d 1541 (Fed. Cir. 1995) ...................................................................................8

*Alpine View Co. Ltd. v. Atlas Copco AB,*
    205 F.3d 208 (5th Cir. 2000) .....................................................................................8

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994) ...................................................................................9

*Brillhart v. Excess Ins. Co. of Am.,*
    316 U.S. 491 (1942) .................................................................................................11

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ...................................................................................................9

*Burstein v. State Bar of California,*
    693 F.2d 511 (5th Cir. 1982) .....................................................................................7

*Cotn'l Grain Co. v. Barge FBL -585,*
    364 U.S. 19 (1960) ...................................................................................................13

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,*
    297 F.3d 1343 (Fed. Cir. 2002) .................................................................................6

*Genentech, Inc. v. Eli Lilly & Co.,*
    998 F.2d 931 (Fed. Cir. 1993) .................................................................................13

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,*
    820 F. Supp. 503 (C.D. Cal. 1992) ...........................................................................6

*Gov't Employees Ins. Co. v. Dizol,*
    133 F.3d 1220 (9th Cir. 1998) .................................................................................11

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ...................................................................................................8

*Hildebrand v. Steck Mfg. Co.,*
    279 F. 3d 1351 (Fed. Cir. 2002) ................................................................................6

*Hupp v. Siroflex of Am., Inc.,*
    848 F. Supp. 744 (S.D. Tex. 1994) .......................................................................8, 9

1    *Inamed Corp. v. Kuzmak*,
          249 F.3d 1356 (Fed. Cir. 2001) ........................................................................7
2
     *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
3         456 U.S. 694 (1982) ........................................................................................7

4    *Int'l Shoe Co. v. Washington*,
          326 U.S. 310 (1945) ........................................................................................7
5
     *Jones v. GNC Franchising, Inc.*,
6         211 F.3d 495 (9th Cir. 2000) .................................................................6, 7, 11

7    *Kahn v. General Motors Corp.*,
          889 F.2d 1078 (Fed. Cir. 1989) .....................................................................11
8
     *Koch Eng'g Co. v. Monsanto Co.*,
9         621 F. Supp. 1204 (E.D. Mo. 1985) ...............................................................13

10   *Petty-Ray Geophysical Geosource, Inc.*,
          954 F.2d 1061 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992) ........................7
11
     *Product Promotions, Inc. v. Cousteau*,
12        495 F.2d 483 (5th Cir. 1974) ...........................................................................7

13   *Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
          119 F.3d 1559 (Fed. Cir. 1997) .....................................................................12
14
     *Royal Queentex Enters. v. Sara Lee* Corp., No. C 99-4787, 2000 U.S. Dist.
15        LEXIS 10139 (N.D. Cal. Mar. 1, 2000) .........................................................11

16   *Schlobohm v. Schapiro*,
          784 S.W.2d 355 (Tex. 1990) ............................................................................7
17
     *Shaffer v. Heitner*,
18        433 U.S. 186 (1977) ........................................................................................8

19   *Silent Drive, Inc. v. Strong Indus., Inc.*,
          326 F.3d 1194 (Fed. Cir. 2003) ...................................................................6, 7
20
     *Stewart Org., Inc. v. Ricoh Corp.*,
21        487 U.S. 22 (1988) ..........................................................................................6

22   *Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
          57 F.3d 1054 (Fed. Cir. 1995) .......................................................................14
23
     *Technical Concepts L.P. v. Zurn Indus.*,
24        No. 02 C 5150, 2002 WL 31433408 (N.D. Ill. Oct. 31, 2002).......................13

25   *VE Holding Corp. v. Johnson Gas Appliance Co.*,
          917 F.2d 1574 (Fed. Cir. 1990), *cert. denied*, 499 U.S. 922 (1991) .............5
26
     *Wilson v. Belin*,
27         20 F.3d 644 (5th Cir. 1994) .........................................................................7, 8

28   *World-Wide Volkswagon v. Woodson*,
          444 U.S. 286 (1980) ........................................................................................8

1

## STATUTES

2   28 U.S.C. § 1391(b)..........................................................................................................5

3   28 U.S.C. § 1400(a)..........................................................................................................5

4   28 U.S.C. § 1404(a) …………..........................................................................................6

5   28 U.S.C. § 1406(a)..........................................................................................................6

6   35 U.S.C. § 271...............................................................................................................9

7

## RULES

8   Fed. R. Civ. Pro. 12(b)(3)........................................................................................1, 5, 6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Litepanels respectfully requests that the Court dismiss plaintiff's action under Fed. R. Civ. Pro. 12(b)(3), as declaratory Plaintiff Swit Electronics Co., Ltd's ("Swit") strategic selection of venue in the Northern District of California is fatally flawed.  In the alternative, Litepanels respectfully requests that the Court transfer this action to the Eastern District of Texas.

First, plaintiff and defendant have no connection to the Northern District of California and there is no allegation that any of the conduct underlying the claims or defenses occurred in this district. Second, Litepanels has been litigating a patent infringement suit on these patents since April 2006 against another infringer in the Eastern District of Texas, involving the majority of the same patents as in this present case.  Litepanels filed a patent infringement suit against Swit and its Texas-based exclusive U.S. distributor just days after Swit filed this preemptory action in the Northern District of California.  Both Texas actions are assigned to the same District Judge who will manage these cases, interpret the patents claims and conduct jury trials on Litepanels' patents.  The parties are scheduled to serve Markman briefs in September 2007 and a Markman hearing is scheduled to be held on these patents in the earlier filed Texas action on November 1, 2007.

This patent dispute plainly belongs in the Eastern District of Texas and Swit should not be rewarded by its decision to "race to the courthouse" after it learned that Litepanels had prepared a patent infringement complaint and would be taking imminent action to enforce its patents against Swit and its Texas distributor Varizoom.  Thus, this case is anything but an ordinary declaratory judgment action, and Swit is by no means a victim of uncertainty or delay in need of declaratory relief.  Rather, Swit knew for certain that Litepanels would shortly be filing suit in Texas to stop Swit's infringing activities.

Swit's use of a preemptive declaratory judgment suit and blatant forum shopping should not be permitted.  Courts routinely dismiss declaratory judgment actions under such circumstances.  If transfer were not granted, two separate federal judges would need to become familiar and preside over litigation of many of the same issues in separate forums, at similar times, resulting in substantial

1  duplication of effort, and an increased risk of inconsistent rulings or judgments.  In this case, every

2  relevant factor of the Declaratory Judgment Act weighs strongly in favor of dismissal or transfer.

3  **II.    ISSUES TO BE DECIDED**

4        There are four issues to be decided in this motion:

5        1.    Whether venue is improper in the Northern District of California and the case should be

6  dismissed or transferred where (1) defendant Litepanels does not reside in the district; and (2) no

7  events giving rise to plaintiff Swit's claims occurred in the district.

8        2.    Whether no actual and justiciable controversy existed between Swit and Litepanels

9  concerning U.S. Patent No. 7,140,742 because Litepanels is not asserting that Swit infringes the '742

10  patent.

11        3.    Whether the Court should exercise its discretion and decline to hear Swit's declaratory

12  judgment claim that Litepanel's '823, '742 and '302 patents are not infringed and invalid because Swit

13  improperly used the Declaratory Judgment Act as a means to forum shop knowing that Litepanels was

14  preparing to file a patent infringement suit in Texas and did, in fact, file such suit a few days after this

15  California action was filed.

16        4.    Whether the Court should transfer Swit's declaratory judgment claim that Litepanel's

17  '823, '742 and '302 patents are not infringed and invalid to the Eastern District of Texas under 28

18  U.S.C. §§ 1404 and/or 1406 because that Court is presiding over two patent infringement cases

19  involving these same patents, one involving these same parties and will fully resolve the parties' patent

20  infringement dispute.1

21

22

23

24

_____

25  1 On May 29, 2007, Litepanels filed a patent infringement action against Swit, Swit's Texas distributor
   Varizoom, its principal Mr. Thomas McKay, and on June 14 joined as a defendant Varizoom's
26  affiliated corporation, Tom's Way Corp., captioned Litepanels v. McKay et al., Case No. 6:07-CV-239
   LED, accusing these defendants of infringing Litepanel's '823 and,'302 patents. These are two of the
27  three patents-in-suit in this California action.  Litepanels does not accuse Swit of infringing Litepanels'
   '742 patent and, accordingly, Swit's claim for a declaration regarding that patent should be dismissed from
28  this action.

1    **III.    STATEMENT OF FACTS**

2        **A.    The Parties.**

3        Plaintiff Swit Electronics is a Chinese corporation, with its principal place of business in

4    Nanjing, China, that manufactures and sells lighting products, including the S2000 and S2010

5    products, through its Texas distributor.  (Complaint, ¶¶ 9, 11-13.)  Swit does not allege in the

6    Complaint that it has offices, employees, business operations, distributors, or connection of any kind

7    with the Northern District of California.  (Complaint, ¶ 2.)  Swit's exclusive distributor in the United

8    States is a Texas company, Varizoom Lens Controls, and its affiliate Tom's Way, Inc. both located in

9    the State of Texas.  (Declaration of Ken Fisher dated June 15, 2007, ¶ 3, Exh. A ("Fisher Decl.").)

10       Defendant Litepanels is a Los Angeles technology and licensing company that owns the '823,

11   '742 and '302 patents-in-suit.  Litepanels has no office, facilities, business operation, and does not and

12   has never conducted business in the Northern District of California.  (Fisher Decl. ¶ 2.)

13       **B.    Swit's Patent Infringement And Litepanels' Cease And Desist Letters.**

14       On February 13, 2007, Litepanels' intellectual property attorney sent a letter to Varizoom

15   identifying Litepanels two patents and requesting that Varizoom respect Litepanels' intellectual

16   property.  (Fisher Decl. ¶ 4, Exh. B.)  Litepanels' February 13, 2007 letter was delivered to Varizoom's

17   Showroom address by Federal Express, but was later refused and returned to Litepanels.  (Id.)

18       On March 19, 2007, before this action was filed, Litepanels, through a representative in Plano,

19   Texas, purchased a Swit's infringing light product, model S-2010 LED on-camera light, through Swit's

20   Texas-based exclusive United States distributor Varizoom (www.varizoom.com).  The representative

21   purchased this product on Varizoom's web site.  (Fisher Decl. ¶ 6.)

22       On or about March 21, 2007, Litepanels sent another letter to Varizoom requesting that it cease

23   and desist from offering and selling infringing Swit lighting products models S2010 and S2000.

24   Litepanels' March 21, 2007 letter was sent via email, and Federal Express.  (Fisher Decl. ¶ 7, Exh. C.)

25       On March 23, 2007, Litepanels received a telephone call from Mr. Tom McKay, the principal

26   of Varizoom, who indicated that he had received Litepanels' cease and desist letter. He further stated

27   that he had reviewed our patents and that he would contact Swit to review the patents as well.  He also

28

1   stated that Swit may be interested in a licensing agreement involving the Litepanels patents.

2   (Declaration of Rudy G. Pohlert dated June 15, 2007, ¶ 2.)

3          On or about March 27, 2007 Litepanels sent yet another letter to Varizoom demanding that

4   Varizoom ensure that the infringing Swit lighting products not be shown at an upcoming National

5   Association of Broadcasters tradeshow ("NAB") in Las Vegas, Nevada that was to be held on April

6   16-19, 2007.  (Fisher Decl. ¶ 8, Exh. D.)  Litepanels further indicated that a complaint for patent

7   infringement had been prepared and that shortly the matter would be referred to litigation counsel.

8   (Id.)  On March 28, 2007, Litepanels received a fax from Mr. McKay confirming receipt of Litepanels

9   cease and desist demands.  (Fisher Decl., Exh. E.)

10         On or around March 29, 2007, Litepanels' manager, Mr. Ken Fisher, spoke with Varizoom's

11  president, Mr. McKay, who indicated that he had no interest in entering into patent litigation with

12  Litepanels and stated that he would agree to Litepanels' cease and desist terms.  (Fisher Decl. ¶ 10.)

13  Mr. Fisher stated that the claims in Litepanels patents are detailed and readily understandable in

14  Litepanels patents, and suggested that they be reviewed by Varizoom's patent attorney.  (Id.)

15  Varizoom's president stated that he would agree to Litepanels' cease and desist demands, and

16  requested that Litepanels also consider a license agreement on the Swit products.  (Id.)

17         On April 16, 2007, at the NAB trade show, despite the promises of Mr. McKay, Swit's

18  infringing lighting products were displayed at Swit's trade show booth.  (Fisher Decl. ¶ 11, Exh. A.)

19  Litepanels learned that Swit was telling potential customers at the trade show that Varizoom is still

20  selling the infringing lighting products, models S2010 and S2000, despite Mr. McKay's written

21  assurances made to Litepanels.  (Fisher Decl. ¶ 12.)

22         On April 17, 2007, Litepanels hand delivered a letter to Swit requesting that Swit remove the

23  infringing products from its booth at the NAB trade show and further stating that Litepanels will

24  vigorously enforce its patents.  (Fisher Decl. ¶ 13, Exh. F.)

25         More recently, on June 14, 2007, Litepanels, through a representative in Longview Texas,

26  acquired a separate-model Swit S-2000 LED on camera light, via one of Varizoom's Internet dealers

27  Adorama (www.adorama.com).  (Fisher Decl. ¶ 14.)

28

1    **IV.    ARGUMENT**

2        **A.    Declaratory Plaintiff Selected an Improper Venue To Resolve This Dispute**

3        The Court should dismiss plaintiff's declaratory action under Fed. R. Civ. Pro. 12(b)(3) as

4    Swit's selection of venue in the Northern District of California is fatally flawed.  Plaintiff seeks a

5    declaration of non-infringement of a patent and, therefore, venue is governed by the general venue

6    statutes, not the special venue statute for patents 28 U.S.C. § 1400(a).  *See VE Holding Corp. v.*

7    *Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed. Cir. 1990), *cert. denied,* 499 U.S. 922 (1991).

8        Plaintiff alleges that subject matter jurisdiction in this action is based on federal law relating to

9    patents and not on diversity of citizenship.  (Complaint, ¶ 5.)  Venue is, therefore, controlled by 28

10    U.S.C. § 1391(b), which provides in relevant part that a civil action may be brought *only* in a judicial

11    district (emphasis added):

12        (1)    where the defendant resides;

13        (2)    in which a substantial part of the events giving rise to the claim occurred, or a

14            substantial part of the property that is the subject of the action is situated; or

15        (3)    in which any defendant may be found, if there is no district in which the action may

16            otherwise be brought.

17        The first and third bases for venue are readily disposed of here.  Litepanels does not reside in

18    this judicial district.  Litepanels has resided in the Central District of California since its inception.  In

19    addition, whether or not Litepanels can be "found" in this district, there is another district — the

20    Eastern District of Texas or the Central District of California — where this action could otherwise

21    have been brought.  Similarly, there is no property situated in the district that is the subject of this

22    action.

23        Venue is, therefore, proper in this district under subsection (2) only if a substantial part of the

24    events giving rise to the claim occurred here.  They did not.  The events giving rise to Plaintiff's claim

25    are outlined in paragraph 9 of Swit's Complaint, and consist of Litepanels counsel making a clear and

26    imminent threat to sue Swit for infringing activities if they continued their existing activities.  This

27    threat was made in letters sent to Swit's distributor in Texas and at a tradeshow in Nevada, against a

28    Chinese company.  (Fisher Decl. ¶¶ 4-13).  Accordingly, venue is not proper in this Judicial District

1   and therefore dismissal under Fed. R. Civ. Pro. 12(b)(3), or transfer under 28 U.S.C. § 1406(a) is

2   appropriate.

3   **B.    Dismissal or Transfer Is Proper Under 28 U.S.C. 1406(a)**

4   Under 28 U.S.C. § 1406(a), a district court has two choices when venue is improper: it (1)

5   "shall dismiss," or (2) "if it be in the interest of justice, transfer such case to any district ... in which it

6   could have been brought." *See Abrams Shell v. Shell Oil Co*., 165 F. Supp. 2d 1096, 1103 (C.D. Cal.

7   2001). As set forth above, venue in this district is improper as to the Defendant. If the Court declines to

8   dismiss this action for improper venue, it can transfer this action to Texas under 28 U.S.C. § 1406(a)

9   where it could have been brought.  Specifics related to the Eastern District of Texas being a proper

10  district are discussed below.

11  **C.    Alternatively, Transfer Is Proper Under 28 U.S.C. 1404(a)**

12  Section 1404(a) provides discretionary grounds for transferring an action if a court determines

13  that venue is proper in this district, but for convenience or judicial efficiency the action should be

14  transferred to another district where the action could have been filed.  Section 1404(a) provides that,

15  "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer

16  any civil action to any other district or division where it might have been brought." *See Goodyear Tire*

17  *& Rubber Co. v. McDonnell Douglas Corp*., 820 F. Supp. 503, 506 (C.D. Cal. 1992).  Courts have

18  broad authority to transfer cases under § 1404(a).  *See Jones v. GNC Franchising, Inc*., 211 F.3d 495,

19  498 (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  Here, both

20  convenience and the interest of justice favor transfer to the Eastern District of Texas.

21  **1.    The Texas Court Has Personal Jurisdiction Over Swit And Is Therefore An**

22  **Appropriate Transferee District Under 1406(a) and 1404(a)**

23  An action may be transferred to any district where it "might have been brought."  28 U.S.C. §

24  1404(a).  The determination whether the Texas district court has personal jurisdiction over defendants

25  in a patent infringement case involves two inquiries. First, whether jurisdiction exists under the state

26  long-arm statute.  See *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003);

27  *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349-50 (Fed.

28  Cir. 2002); *Hildebrand v. Steck Mfg. Co.*, 279 F. 3d 1351, 1354 (Fed. Cir. 2002). Second, if such

1  jurisdiction exists, whether its exercise would be consistent with the limitations of the due process

2  clause. See *Silent Drive*, 326 F.3d at 1201; *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359-60 (Fed.

3  Cir. 2001).

4      Because Texas' long-arm statute is coextensive with the limits of federal due process, the only

5  inquiry is whether or not exercising personal jurisdiction over the defendant in Texas comports with

6  due process. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990); *3D Sys., Inc. v. Aarotech*

7  *Labs., Inc.,* 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). The assertion of jurisdiction is consistent with

8  the federal due process if two requirements are met. First, "the nonresident defendant must have

9  purposefully availed himself of the benefits and protections of the forum state by establishing

10  'minimum contacts' with that forum state." *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994) (citing

11  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Second, "the exercise of jurisdiction over the

12  nonresident defendant must not offend 'traditional notions of fair play and substantial justice.'" *Id.*

13          a.    Litepanels' *Prima Facie* Showing Of Swit's 'Minimum Contacts'

14                With Texas Defeats Swit's Motion To Dismiss For Lack Of Personal

15                Jurisdiction.

16      While Litepanels bears the burden of establishing personal jurisdiction, "only a *prima facie*

17  case must be established; proof by a preponderance is not required." *Jones v. Petty-Ray Geophysical*

18  *Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir. 1992), *cert. denied,* 506 U.S. 867 (1992). Any genuine,

19  material conflicts between the facts as established by the respective parties' appropriate affidavits, and

20  other proper summary judgment type evidence, must be resolved in favor of jurisdiction. *Id.* Further,

21  plaintiff need not establish all facts necessary to support a cause of action for the court to exercise

22  personal jurisdiction over the defendant. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 490 (5th

23  Cir. 1974), *overruled on other grounds by Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,

24  456 U.S. 694 (1982), *as stated in Burstein v. State Bar of California*, 693 F.2d 511, 518 n. 12 (5th Cir.

25  1982).

26      Here, Swit has advertised and offered the accused products for sale in Texas via an interactive

27  website that links consumers to Swit's Texas-based U.S. distributor Varizoom. (Fisher Decl. ¶ 3.)

28  Swit has purposefully placed the accused products in the stream of commerce with the expectation that

1  its products would be purchased by Texas consumers, through its Texas Distributor. In fact, Swit made

2  at least one known sale of the accused products to a Litepanels representative located in the Eastern

3  District of Texas through Varizoom.  (Fisher Decl., ¶ 6.)

4             **b.**     **Swit Has "Minimum Contacts" in the State of Texas.**

5        A defendant has "minimum contacts" with the forum when it has "purposely avails itself of the

6  privilege of conducting activities within the forum State, thus invoking the benefits and protections of

7  its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). The "minimum contacts" aspect of due

8  process can be satisfied by a finding of either specific jurisdiction or general jurisdiction. *Wilson,* 20

9  F.3d at 647. Specific jurisdiction over a nonresident corporation exists when the plaintiff demonstrates

10 the defendant purposefully directed its activities at the forum state and the plaintiff's claim arises out

11 of those activities. *Akro Corp. v. Luker,* 45 F.3d 1541, 1545-46 (Fed. Cir. 1995). Here again, Swit

12 cannot credibly argue that it did not avail itself of conducting activities within Texas, as Swit

13 specifically chose to base its U.S. operations in Texas, through its Texas-based U.S. distributor.

14       Moreover, when a nonresident's contact with the forum state "stems from a product, sold or

15 manufactured by the foreign defendant, which has caused harm in the forum state, the court has

16 jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the

17 expectation that it would be purchased by or used by consumers in the forum state." *Alpine View Co.*

18 *Ltd. v. Atlas Copco AB,* 205 F.3d 208, 216 (5th Cir. 2000) (citing *World-Wide Volkswagon v.*

19 *Woodson,* 444 U.S. 286, 298 (1980)). Additionally, even when the defendant lacks control over

20 distribution of the product in the forum state, that lack of control will not bar jurisdiction when the

21 plaintiff has alleged an intentional tort. *Hupp v. Siroflex of Am., Inc.,* 848 F. Supp. 744, 748 (S.D. Tex.

22 1994). Thus, there must be a connection between defendant's contacts with Texas and plaintiff's

23 causes of action. *Id.; see also Shaffer v. Heitner,* 433 U.S. 186, 204 (1977). Examples of such

24 connections would be allegations that the wrongful acts occurred in Texas. *See Alpine View,* 205 F.3d

25 at 217.

26       As noted by the court in *Hupp v. Siroflex America, Inc.,* the Texas long-arm statute allows a

27 court to exercise personal jurisdiction over a nonresident that commits a tort in Texas. 848 F. Supp. at

28 746. Patent infringement is a tort, and its injury occurs in the state where the infringing article is sold.

1    *Id.* at 747; *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed. Cir.

2    1994).

3         Litepanels alleges in its Texas complaint that Swit has infringed the '302 patent and '823 patent

4    under 35 U.S.C. § 271 by selling or offering to sell either directly, indirectly, and/or through acts of

5    third parties.  (Declaration of Robert F. Kramer dated June 15, 2007 ("Kramer Decl."), Exh. A at ¶¶ 9-

6    12.)  Litepanels also alleges that Swit sells these products either directly or through its distributors.

7    Specifically, Swit sells its products, including the accused products, in Texas through its exclusive

8    distributor Varizoom. Varizoom also operates a website, varizoom.com, that has advertised and made

9    Swit's products available for purchase via the website. Swit's corporate website, www.swit-

10   battery.com, identifies Texas-based Varizoom as its *sole* United States [distributor] dealer.

11   Accordingly, any Texas resident can purchase Swit products over the Internet and have the products

12   shipped solely within the State of Texas.  The evidence clearly establishes that Swit has offered the

13   accused products for sale in Texas and thus committed the tort of patent infringement in Texas. Clearly

14   specific jurisdiction exists over Swit in Texas.

15        **2.    "Fair Play and Substantial Justice" Support Jurisdiction.**

16        Lastly, the Court must determine whether asserting personal jurisdiction over Swit in Texas

17   would violate notions of fair play and substantial justice. This requires the court to consider:

18        the burden on the defendant, the forum State's interest in adjudicating the dispute, the
     plaintiff's interest in obtaining convenient and effective relief, the interstate judicial
19        system's interest in obtaining the most efficient resolution of controversies, and the
     shared interest of the several States in furthering fundamental substantive social
20        policies.

21   *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985) (internal quotations omitted).

22        Here, assertion of personal jurisdiction over Swit would not violate notions of fair play and

23   substantial justice.  Texas has a substantial interest in adjudicating this dispute because Swit purposely

24   directed its infringing activities to Texas residents. It would be patently unfair, under these

25   circumstances, to allow Swit's Texas-based distributor to actively sell an infringing product with

26   impunity without being held accountable in that state. *See Hupp*, 848 F. Supp. at 748. To conclude

27   otherwise would "encourage blatant infringement and severely impair" Litepanels' ability to enforce

28   its patents and other intellectual property rights. *Id.* at 749.  As outlined herein, the Texas judicial

1  system can also better resolve the controversy in a judicially efficient manner insofar as a district judge

2  in Texas is already presiding over a patent infringement action involving and he will construe these

3  patents.

4       In the alternative, pursuant to the Constitution and laws of the United States (including Federal

5  Rule of Civil Procedure 4(k)(2)), the Texas Court has personal jurisdiction over Swit, even if Swit is

6  not subject to the jurisdiction of the courts of general jurisdiction of any state, consistent with the

7  Constitution and laws of the United States.

8       **D.      Convenience Favors Transfer To The Eastern District Of Texas**

9       Swit's Texas-based agent and distributor Varizoom is a necessary party in this dispute because

10  it has imported and sold Swit's allegedly infringing products in the United States — even doing so

11  under its own brand name.  Thus, Varizoom is a co-infringer of Litepanels' patents.

12       As Varizoom is a Texas company, the relevant employees of Varizoom are ostensibly residents

13  of Texas. The Eastern District of Texas is over a thousand miles closer and substantially more

14  convenient for Swit's agent Varizoom and its employees than the Northern District of California.

15  (Varizoom would have to travel over twenty-two hundred extra miles to get to, and from, the Northern

16  District of California.) Moreover, Litepanels has pre-existing litigation involving the same patents in

17  Texas. As such, Litepanels will already be attending hearings in Texas, and can therefore take

18  depositions of the Varizoom employees at the same time.  These conveniences favor transfer to the

19  Eastern District of Texas.

20       Moreover, Swit cannot complain that it is inconvenient to litigate in Texas.  Swit specifically

21  chose the State of Texas to base its U.S. operations by its selection of its exclusive U.S. distributor in

22  Texas.  Swit should be bound to resolve this dispute in the state that it itself chose.  When the interests

23  of all relevant parties and other factors are taken into account, the balance of conveniences

24  unquestionably tips in favor of the Eastern District of Texas. Moreover, Swit's declaratory judgment action

25  has nothing to do with convenience—and everything to do with forum shopping.

26       **E.      The Interests Of Justice Favor Transfer To The Eastern District Of Texas.**

27       Moreover, in determining whether to retain declaratory actions, courts are guided by certain

28  "touchstone" factors, including whether the action is the result of "forum shopping". *Gov't Employees*

1   *Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998) (referring to factors set forth in *Brillhart v.*

2   *Excess Ins. Co. of Am.,* 316 U.S. 491, 495 (1942)).  Transfer would promote justice by defeating Swit's

3   attempt to gain unfair advantage by forum shopping. A plaintiff's chosen forum deserves little

4   deference when the plaintiff has engaged in forum shopping. *See Royal Queentex Enters. v. Sara Lee*

5   *Corp.,* No. C 99-4787, 2000 U.S. Dist. LEXIS 10139, at *10 (N.D. Cal. Mar. 1, 2000).

6        Here again, a red flag is raised by Swit's own actions, as it made a strategic decision to select a

7   venue with no connection to any of the parties, and in a district where no unique operative facts exist

8   or occurred. Restated, Swit could have chosen to file it action Central District of California where

9   Defendant Litepanels resides, yet it did not.  Allowing Declaratory Plaintiffs to maintain this action

10  would also contravene the purpose of the Declaratory Judgment Act by encouraging forum shopping.

11  *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (noting forum shopping

12  "may justify a departure from the first-filed rule of priority").  As such, declaratory Plaintiff's chosen

13  forum should be given little consideration here because Litepanels does not reside in this District and

14  this forum lacks a significant connection, much less any connection to the claims asserted in this

15  action.

16       Conversely, transferring the present action to the Texas serves both the public's interest, and the

17  interests of justice, as it would allow consolidation and/or coordination with the aforementioned pre-

18  existing Texas lawsuit (covering the same patents) and therefore promote judicial economy. Transfer

19  of this case would avoid duplicative discovery litigation and prevent wasted time and money, all

20  factors that support transfer. *See, e.g.*, *Jones*, 211 F.3d at 498.  Indeed, because the patents involved in

21  Swit's California declaratory action against Litepanels are already part of a related Texas lawsuit that

22  has been pending for over a year, the Eastern District of Texas is the only district that can completely

23  resolve the dispute between the parties in a judicially economic fashion.

24       Moreover, Swit's forum shopping is particularly egregious in this case because Swit was fully-

25  informed that Litepanels' lawsuit complaint has already been prepared and shortly the entire matter

26  will be referred to Litepanels' litigation counsel.  (Fisher Decl. ¶ 8.)  Yet, Swit still chose to pursue its

27  declaratory judgment claims in another forum unrelated to any party or underlying action.  The Court

28

1  should reject Swit's blatant forum shopping attempt, and may do so by transferring the declaratory

2  judgment action to the Eastern District of Texas.

3  **F.     Judicial Economy Favors A Change In Venue.**

4  It is well recognized and common sense that in appropriate circumstances such as these patent

5  cases should be transferred to a court that already has a familiarity with the key issues and evidence

6  resulting from previous litigation involving the same patents.  Judge Davis is already presiding over a

7  related patent action filed in Eastern District of Texas — *Litepanels v. Gekko*, 2:06-CV-167 LED,

8  involving these patents. (Kramer Decl. ¶ 4, Exhs. B - D)

9  This earlier-filed case in Texas will raise the same claim construction, validity, and

10  unenforceability issues that would be raised here.  Importantly, the co-pending *Litepanels v.*

11  *Varizoom/Swit* infringement action (6:07-CV-239 LED) in Texas is already assigned to Judge Davis.

12  Thus, allowing Swit's Northern California case to proceed, while the related Gekko case is *already*

13  underway and being litigated in the Eastern District of Texas will unquestionably duplicate judicial

14  resources and create a risk of having inconsistent rulings on claim construction, validity, and

15  unenforceability of the Litepanels' patents.

16  Here, while the defendants are different, the patents at issue are the same, and thus the

17  argument for transfer is even stronger.  Court recognize that the special need for uniformity in patent

18  cases strongly favors transfer.  Besides being a duplicative use of scarce judicial resources, a second

19  claim construction would risk inconsistent claim constructions, create greater uncertainty regarding the

20  patent's scope, and impede the administration of justice.

21  Furthermore, a great deal of complex technical evidence relating to Litepanels patents will

22  overlap between this litigation and the previously-filed case pending in the Eastern District of Texas.

23  Accordingly, Judge Davis is acquiring ongoing familiarity with all of these materials and issues as this

24  2006 case is now approaching its Markman hearing and subsequent trial. Moreover, public interest

25  strongly supports transfer to avoid duplication of such effort by this Court. Here, in contrast, this

26  California Court will have no such substantive efficiencies. *See also Regents of the Univ. of Cal. v. Eli*

27  *Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (noting in a patent case that "the interest of justice,

28  which includes judicial economy, may be determinative to a particular transfer motion, even if the

1  convenience of the parties and witnesses might call for a different result.") (internal quotations and

2  citation omitted).

3      Additionally, transfer is particularly appropriate when the two litigations in question are

4  proceeding concurrently. *See Cont'l Grain Co. v. Barge FBL -585,* 364 U.S. 19, 26 (1960) ("To permit

5  a situation in which two cases involving precisely the same issues are simultaneously pending in

6  different District Courts leads to the wastefulness of time, energy and money that 1404(a) was

7  designed to prevent.") (emphasis added); *see also Technical Concepts L.P. v. Zurn Indus.,* No. 02 C

8  5150, 2002 WL 31433408, *6 (N.D. Ill. Oct. 31, 2002).

9      Going into more detail, a court has discretion to dismiss a first-filed action in favor of a later-

10  filed action when there is "sound reason that would make it unjust or inefficient to continue the first-

11  filed action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993). One "sound

12  reason" is "the possibility of consolidation with related litigation." *Id*. Important factors to consider are

13  "conservation of judicial resources and the comprehensive disposition of litigation." *Id*.

14      Adjudicating this action in this Court would be inefficient as all of the Genentech factors listed

15  above favor transfer to Texas. For example, depositions in the earlier-filed Texas Gekko case have not

16  yet began, and discovery is open through February 4, 2008.  (Kramer Decl., Exh. D.)  Therefore, "the

17  possibility of [discovery] consolidation with related litigation" readily exists.  *Genentech,* 998 F.2d at

18  938.  Additionally "conservation of judicial resources," and "the comprehensive disposition of

19  litigation" are present only with the second-filed Texas-Action as:  a) only one Judge is required to

20  become familiar with the relevant technology; b) only one Judge would construe the claims of patents

21  on related technology; and c) Swit's Texas-based U.S. distributor is already a co-defendant party in the

22  Texas action, and is not a party in this action.

23      Accordingly, the Court should exercise its discretion to transfer Swit's declaratory judgment

24  action, or dismiss it.  *See Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1208 (E.D. Mo. 1985)

25  (dismissing declaratory judgment action in one forum when it was not clear that the forum could

26  resolve the entire controversy but it was clear that the other forum could).

27

28

1    **G.    No Case In Controversy Regarding U.S. Patent No. 7,140,742.**

2    Litepanels is not accusing Swit's S2000 or S2010 light product of infringing U.S. Patent No.

3    7,140,742.  Accordingly, there is no actual and justiciable controversy between Swit and Litepanels

4    concerning U.S. Patent No. 7,140,742.  Swit's declaratory judgment claim that this patent is not

5    infringed and is invalid should therefore be dismissed.  *See Super Sack Mfg. Corp. v. Chase Packaging*

6    *Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).

7    **V.    CONCLUSION**

8    The Court should dismiss this action for improper venue pursuant to Federal Rule of Civil

9    Procedure 12(b)(3).  In the alternative, the Court should transfer this action to the Eastern District of

10    Texas pursuant to 28 U.S.C. §§ 1404 or 1406.

11    The electronic filer hereby attests that the individual whose name appears has signed this

12    document.  See General Order 45, Section X.

13

14    Dated:  June 15, 2007                    Respectfully submitted,

15                                             HOWREY LLP

16

17                                             By:   /s/ K.T. Cherian
18                                                   K. T. Cherian
                                                     Attorneys for Defendant
19                                                   LITEPANELS, LLC

20

21

22

23

24

25

26

27

28