Henry C. Bunsow (SBN 60707)
bunsowH@howrey.com
K.T. Cherian (SBN 133967)
cherianK@howrey.com
Robert Kramer (SBN 181706)
kramerR@howrey.com
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California  94105
Telephone:  (415) 848-4900
Facsimile:  (415) 848-4999

Joshua A. Burt (SBN 222302)
burtj@howrey.com
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
Telephone: (213) 892-1946
Facsimile (213) 402-8137

Attorneys for Defendant
LITEPANELS, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SWIT ELECTRONICS CO., LTD, <br><br> Plaintiff, <br><br> vs. <br><br> LITEPANELS, LLC, <br><br> Defendant. | Case No. C-07-02645 JSW <br> Jury Trial <br><br> **LITEPANELS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER VENUE** <br><br> Hearing Date:  August 3, 2007 <br> Time:  9:00 a.m. <br> Judge:  Hon. Jeffrey S. White <br> Courtroom:  2, 17th Floor |

**TABLE OF CONTENTS**

<u>**Page**</u>

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

II. ARGUMENT ........................................................................................................................... 2

    A.    Litepanels LLC is the Only Defendant and any Activities of a Separate Company Are Irrelevant. ............................................................... 2

    B.    The Policy Behind the Declaratory Judgment Act Favors Dismissal or Transfer ............................................................................................................ 3

    C.    The First to File Equitable Factors Favor Transfer of Venue ............................... 4

        1.    Judicial Economy Favors A Change In Venue ......................................... 4

        2.    Swit's Declaratory Complaint Filing Was Both Anticipatory And Inappropriate Forum Shopping ................................ 8

        3.    Swit and/or its U.S. Agent engaged in Bad Faith Negotiations ................................................................................................ 10

        4.    Convenience Factors Weigh Heavily in Favor of Transfer ................... 10

    D.    Swit Incorrectly Asserts That There Is Actual and Justiciable Controversy Regarding The '742 patent ....................................................... 12

III. CONCLUSION ..................................................................................................................... 12

1

**TABLE OF AUTHORITIES**

2

**CASES**

3    *Aero Products Int'l, Inc. v. Intex Rec. Corp.*,
        466 F.3d 1000 (Fed. Cir. 2006) ................................................................................... 7

4

5    *Al-Or Int'l Ltd. v. Paul Morelli Design Inc.*,
        54 U.S.P.Q. 2d (BNA) 1191 (C.D.Cal. 1999) ......................................................... 10

6    *Alltrade, Inc. v. Uniweld Prods., Inc,*
        946 F.2d 622 (9th Cir. 1991) ....................................................................................... 4

7

8    *Amerada Petroleum Corp. v. Marshall*,
        381 F.2d 661 (5th Cir.1967) ........................................................................................ 8

9    *British Telecomm plc v. McDonnell Douglas Corp.*,
        1993 U.S. Dist. LEXIS 6345 (N.D. Cal. 1993) ......................................................... 8

10

11   *DeFeo v. Procter Gamble Co.*,
        831 F. Supp. 776 (N.D. Cal. 1993) .......................................................................... 8, 9

12   *EMC Corp. v. Norand Corp.*,
        89 F.3d 807 (Fed. Cir. 1996) ....................................................................................... 5

13

14   *Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*,
        350 F.3d 1327 .............................................................................................................. 5

15   *Gribin v. Hammer Galleries, et. al.*,
        793 F. Supp. 233 (C.D. Cal. 1992) ............................................................................. 9

16

17   *In re Horseshoe Entm't*,
        337 F.3d 429 (5th Cir. 2003) ..................................................................................... 11

18   *Inherent.com v. Martindale-Hubbell*,
        420 F. Supp. 2d 1093 (N.D. Cal. 2006)................................................................... 4, 8

19

20   *Intellectual Prop. Dev. v. Inc. TCI Cablevision of Calif. Inc.*,
        246 F.3d 1333, 58 U.S.P.Q. 2d 1681 (Fed. Cir. 2001) ........................................... 12

21   *Minnesota Mining And Mfg. Co. v. Norton Co.*,
        929 F.2d 670 (Fed. Cir. 1991) ..................................................................................... 3

22

23   *Mission Ins. Co. v. Puritan Fashions Corp.*,
        706 F.2d 599 (5th Cir. 1983) ....................................................................................... 8

24   *NeoMagic Corp. v. Trident Microsystems, Inc.*,
        287 F.3d 1062 ............................................................................................................... 5

25

26   *Northwest Airlines v. American Airlines*,
        989 F.2d 1002 (8th Cir. 1993) ................................................................................. 8, 9

27   *SRI Int'l v. Matsushita Elec. Corp. of America*,
        775 F.2d 1107 (Fed. Cir. 1985) ................................................................................... 5

28

*Serco Services Co. v. Kelley Co.*,
    51 F.3d 1037 (Fed. Cir. 1995) ..................................................................................... 4

*Shell Oil Co. v. Frusetta*,
    290 F.2d 689 (9th Cir. 1961) ...................................................................................... 8

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054, 35 U.S.P.Q. 2d 1139 (Fed. Cir. 1995) ............................................... 12

*Tempco Electric Heater Corp. v. Omega Engineering*,
    819 F.2d 746 (7th Cir. 1987) ...................................................................................... 8

*Transamerica Occidental Life Ins. Co. v. DeGregorio*,
    811 F.2d 1249 (9th Cir. 1987) .................................................................................... 9

*Ward v. Follett Corporation*,
    158 F.R.D. 645 (N.D. Cal. 1994) ............................................................................... 8

*Wilton v. Seven Falls Co.*,
    *515* U.S. 277 (1995) ................................................................................................... 4

**STATUTES**

28 U.S.C. § 1391(c) ......................................................................................................... 3

28 U.S.C. §§ 1404 ........................................................................................................... 12

28 U.S.C. § 1404(a) .................................................................................................... 4, 10

1    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

2        Plaintiff Swit Electronics Co., Ltd.'s ("Swit") Opposition to Litepanels LLC's ("Litepanels")

3    Motion to Dismiss or Transfer ("Opposition") raises three weak arguments, none of which are grounds

4    for denying Litepanels' motion.

5        First, Swit argues that defendant Litepanels LLC has sufficient contacts with the Northern

6    District of California to support a finding of personal jurisdiction and venue in this district. But,

7    defendant Litepanels LLC is a licensing company with no contacts within the Northern District of

8    California of any kind. Litepanels sells no products. It offers no services. It has no offices, employees

9    and has no presence of any kind in the Northern District of California and never has. Swit's

10   Opposition erroneously focuses on non-party Litepanels, Inc. in contending that there are sales by

11   distributors in this district of products that are somehow relevant to this motion. But, as Swit knows

12   full well, all of the sales referred to in Swit's Opposition relate to products of a non-party, Litepanels,

13   Inc., and are completely irrelevant. Swit is fully aware that these are two different entities and that

14   Litepanels LLC does not sell any products.

15       Second, Swit argues that its accused lighting products are significantly different from the

16   accused products in the pre-existing *Litepanels v. Gekko* patent litigation pending in the Eastern

17   District of Texas. Based on this fact, Swit argues that there would be no efficiencies achieved if

18   Eastern District Judge Davis were to preside in both the *Gekko* case and the *Litepanels v. Swit et al.*

19   case even though two of the same three patents are at issue in these actions. This is wrong for two

20   reasons: (a) the accused Swit and Gekko lighting products are essentially the same in all relevant

21   respects, and (b) the *Gekko* case has been pending since 2006 is rapidly approaching a *Markman*

22   hearing on November 1, 2007. Clearly efficiencies are achieved by Judge Davis presiding in both

23   cases, rather than asking two Federal Judges to learn the technology and the patents and ask both

24   courts to conduct Markman hearings and issue potentially inconsistent claim construction rulings.

25       Third, contrary to Swit's final argument, convenience factors favor proceeding in Texas, not in

26   the Northern District of California. The facts are simple: Swit is a company based in China and

27   offered no facts in its Opposition to establish any contacts of any kind with the Northern District of

28   California. Swit chose to locate its exclusive United States distributor in Texas. Defendant Litepanels

1   LLC has no contacts with the Northern District of California.  Litepanels, Inc. is a Southern California

2   start up company that is not a party to this case and, in any event, has no offices, employees or contacts

3   with the Northern District of California.  On this record, China-based Swit cannot seriously contend

4   that it would be significantly inconvenienced if required resolving this dispute in Texas or that it would

5   somehow be more convenient for it to litigate this action in the Northern District of California.

6          Finally, in the *Litepanels v. Swit et al.* action filed in the Eastern District of Texas, Litepanels

7   has named not only Swit, but also Swit's Texas-based U.S. distributor of the accused products, as

8   defendants.  Not even Swit can conjure up an argument that would pass the red face test that it would

9   be more convenient for its small Texas-based distributor to defend this action in the Northern District

10  of California.

11  **II.    ARGUMENT**

12          **A.    Litepanels LLC is the Only Defendant and any Activities of a Separate
                    Company Are Irrelevant.**

13          In Litepanels LLC's Motion and supporting declarations, Litepanels makes clear that 1) it is the

14  only defendant in this case, has never had any offices, facilities, business operations or any business

15  activities in the Northern District of California; 2) it is the only assignee of the patents-in-suit; and 3)

16  Litepanels, Inc., a non-party to this case, is the licensee of the patents-in-suit.

17          Swit's Opposition acknowledges the existence of the ***separate*** Litepanels companies.  (*See* Swit

18  Opposition at 1 referencing the "*Litepanels, LLC and Litepanels, Inc. v. Gekko Technology*" litigation

19  in the Eastern District of Texas.)  Although acknowledging that these are separate entities, Swit

20  incorrectly argues that, because Litepanels LLC supposedly "conducts substantial business in the

21  Northern District," venue would be appropriate here.  (*See* Opposition at 8 and 12.)  The reality is quite

22  different.  Defendant Litepanels LLC does *not* manufacture or sell *any* products *anywhere*.  (*See*

23  Declaration of Helen Craig In Support Of Defendant's Reply dated July 19, 2007 ("Craig Reply

24  Decl.") at ¶6.)  Consequently, Litepanels LLC has no dealers in the Northern District of California or

25  anywhere else.  (*Id.*)

26          Ignoring that the two Litepanels companies are separate entities, Swit incorrectly relies on the

27  irrelevant and hearsay laden declaration of its litigation counsel for the proposition that Litepanels LLC

28

1   has business activities in the Northern District of California.  Swit's litigation counsel, Erick Wolf,

2   contends that "[a]ccording to Litepanels' website at www.litepanels.com, Litepanels has a dealer, CA

3   Media Solutions, located… [in] Benicia, CA".  (*See* Declaration of Erick P. Wolf in Support of

4   Plaintiffs Swit's Opposition To Motion To Dismiss or Transfer Venue ("Wolf Decl.") at ¶2.)  A review

5   of the website's contact page clearly shows that this is the website of Litepanels, Inc., a ***non-party*** to

6   this action, not Litepanels LLC.  (*See* Declaration of Kevin Baxter in Support of Defendant's Reply at

7   ¶2, Exh. A.)  Furthermore, Mr. Wolf's declaration introduces impermissible hearsay evidence

8   regarding conversations between Mr. Wolf and third party dealers.  (*See* Wolf Decl. at ¶¶3-5.)

9   Because the entirety of Mr. Wolf's declaration is based on impermissible hearsay, with otherwise

10  irrelevant and misleading evidence, Litepanels LLC has concurrently filed a Motion to Strike Mr.

11  Wolf's Declaration pursuant to Local Rule 7-5.

12      Furthermore, under 28 U.S.C. § 1391(c), the Court must only consider the question of proper

13  venue with the facts that existed at the time of the filing of this case and not later.  (28 U.S.C. §

14  1391(c) provides that "For the purposes of venue under this chapter, a defendant that is a corporation

15  shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction **at the**

16  **time the action is commenced**" (emphasis added).)  Even assuming that Swit's only evidence were

17  admissible, in reality, CA Media was not even a dealer for Litepanels Inc. (again, a non-party) ***at the***

18  ***time the filing*** of this litigation.  In fact, CA Media became a dealer on June 7, 2007, well after this

19  declaratory judgment action was filed.  (*See* Craig Reply Decl. at ¶5.)

20      Because Litepanels LLC is the only defendant in this action, and has never conducted any

21  activities within this Northern District of California, this District is simply not an appropriate venue to

22  resolve this dispute.

23      **B.    The Policy Behind the Declaratory Judgment Act Favors Dismissal or Transfer**

24  The principle purpose of the Declaratory Judgment Act is "to prevent avoidable damages from

25  being incurred by a person uncertain of his rights and threatened with damage by delayed

26  adjudication." *Minnesota Mining And Mfg. Co. v. Norton Co.,* 929 F.2d 670, 673 (Fed. Cir. 1991).

27  Swit fails to meet this purpose when it merely asserts that Litepanels "failed to follow through with [its

28  threatened] suit" without any supporting facts.  (Opposition at page 15.)  As discussed *Infra* at section

1    C.2, this is not the case.  Litepanels did not delay adjudication of its patent infringement claims.  It

2    made it clear to Swit that it would protect its patents, and did exactly that on May 29, 2007 when it

3    filed its promised infringement action against Swit and its Texas-based U.S. Agent/Distributor *before*

4    Litepanels was served with Swit's declaratory relief action.

5         The Declaratory Judgment Act exists to allow parties to achieve finality and to conduct its

6    business without an uncertain future.  This case never had any such uncertainty.  Swit knew that suit

7    was imminent.  That was proven when Litepanels filed suit in Texas just nine (9) days after this case

8    was filed.  The purpose behind the Declaratory Judgment Act require the Court to dismiss or transfer

9    this case in favor the pending case in the Eastern District of Texas.

10         **C.    The First to File Equitable Factors Favor Transfer of Venue**

11        Although the "first-to-file" rule generally affords priority to the first-filed suit[1], the Court has

12   discretion in applying the first-to-file rule and should not apply the rule mechanically.  *Id.*  For

13   example, a court may disregard the first-to-file rule where certain equitable factors such as bad faith,

14   anticipatory filing, forum shopping, judicial economy or the convenience of the parties and witnesses

15   dictate that a later filed action in another district would be the appropriate venue.  *Id.*; *see also* 28

16   U.S.C. § 1404(a).  In this case, ***all*** of the above factors favor Litepanels LLC.  Therefore, the Court

17   should transfer the present action to the Eastern District of Texas.

18         **1.    Judicial Economy Favors A Change In Venue**

19        While Swit claims that public policy favors the maintenance of two separate patent suits based

20   on the same patents before two different courts, such a result would be completely at odds with the

21   public policy of judicial economy.  The court's have found that public policy grants the Court "unique

22   and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory

23   Judgment Act. *Wilton v. Seven Falls Co., 515* U.S. 277, 286 (1995).  Federal Circuit precedent governs

24   the exercise of discretion with respect to declaratory judgment actions in patent cases. *Serco Servs. Co.*

25   *v. Kelley Co.,* 51 F.3d 1037, 1038 (Fed. Cir. 1995).  The Federal Circuit has held that the district court

26

27   ───────────────

[1] *Alltrade, Inc. v. Uniweld Prods., Inc,* 946 F2d 622, 627-28 (9th Cir. 1991); *see also Inherent.com v.*
28   *Martindale-Hubbell,* 420 F. Supp. 2d 1093, 1097-98 (N.D. Cal. 2006).

1  has broad discretion to dismiss a declaratory judgment action when the court "acts in accordance with

2  the purposes of the Declaratory Judgment Act and the principles of sound judicial administration."

3  *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 813-814 (Fed. Cir. 1996).  Under these circumstances,

4  where another related case is pending elsewhere, judicial economy dictates that the Court transfer

5  venue to the Eastern District of Texas.

6     Where there is already a pending case filed based on the same technologies and the same

7  patents, judicial economy favors a change of venue.  Swit would like the Court to believe that its

8  Northern District of California declaratory relief action "is totally unrelated to the Texas [case]"[2], and

9  "the [Gekko] products at issue in Texas are so different from the [Swit] products at issue in California

10  that the claim interpretations and infringement analyses will also necessarily be different."[3]  Swit

11  completely fails to provide any analysis of any claim that would need to be construed differently.  In

12  fact, claims must not be construed with reference to the accused products.  *SRI Int'l v. Matsushita Elec.*

13  *Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985*); see also NeoMagic Corp. v. Trident*

14  *Microsystems, Inc*., 287 F.3d 1062, 1074 (Fed. Cir. 2002 (citing *to SRI Int'l* and holding that "[i]t is

15  well settled that claims may not be construed by reference to the accused device*."; Ferguson*

16  *Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1337 and 1340 (Fed. Cir. 2003).

17  Claim construction is based on the patents-in-suit and other relevant extrinsic evidence, which would

18  be identical in these co-pending cases.

19     Even if the differences between Swit's and Gekko's accused products were relevant, Swit

20  distorts the truth when it states that "Swit makes compact lights that sit [only] on top of a camera"

21  while Gekko's "ringlights" merely go around the camera.[4]  Curiously, Swit leaves out one of the key

22  accused products in the Gekko suit in their analysis -  the Gekko K-Lite product -, a "compact light

23  that sit[s] on top of a camera" which is virtually identical to the Swit lights.[5]  Moreover, when both

24

25  _____

26  [2] Opposition at 8.

  [3] Opposition at 12

27  [4] Opposition at 7

28  [5] *See* Declaration of Ken Fisher In Support Of Defendant's Reply ("Fisher Reply Decl.") at ¶¶5-6.

1  accused devices are properly analyzed, the Swit and Gekko products infringe the same sixteen claims

2  of the '823 patent and the same twenty one claims of the '302 patent.[6]

3       The following table is but one example of the overlapping claim terms and technology in the

4  Texas and California cases[7]:

| Litepanels patents - US 6,948,823 & '302 | Gekko Product - Model: K-Lite Camera-top light | Swit products – Model: S2000 and S2010 Camera-top light |
|---|---|---|
| Fig. 36C – claim term: Surface Mount  | K-Lite(accused device in Texas)  | **Swit S2000 & S2010**  |
| Fig. 42C Claim term: Integrated Lens Cover  | K-Lite  | **Swit S2000 & S2010**  |
| The following product photos show that Swit's argument that the "accused Gekko and Swit products are quite different" is false. | K-Lite  | S2000  |
| | K-Lite  | S2010  |

[6] Fisher Reply Decl. at ¶6.

[7] *See* Fisher Reply Decl. at 7.

1    Clearly reviewing numerous court briefs, hearing testimony from technical advisors and expert

2  witnesses, and then construing claim terms from the patents-in-suit will require significant judicial

3  resources.  Subjecting two separate courts to *Markman* proceedings, as advocated by Swit, will

4  undoubtedly waste a substantial amount of this Court's time and limited resources and may result in

5  inconsistent decisions.

6    Further, Swit ignores the fact that Varizoom is a co-defendant in Litepanels LLC's patent

7  infringement action in the Eastern District of Texas.  Varizoom is the distributor of Swit's infringing

8  products and, therefore, is a key party to this litigation.  Swit has failed to show how Litepanels LLC

9  can assert personal jurisdiction over Varizoom in the Northern District of California.  Because

10  Varizoom is located in Texas, personal jurisdiction in the Eastern District of Texas is assured.  Also,

11  because the facts and events surrounding Varizoom's infringement are the same as those surrounding

12  Swit's infringement, Litepanel's LLC would be forced to argue the same evidence in both the Eastern

13  District of Texas and the Northern District of California.  Such a result would certainly be contrary to

14  the policy of judicial economy.

15    Finally, Swit cites to *Aero Prods. Int'l, Inc. v. Intex Rec. Corp.*, 466 F.3d 1000 (Fed. Cir. 2006)

16  for the proposition that "[d]ifferent defendants can certainly take different approaches to claim

17  construction and arrive at equally supportable, but different, arguments based upon the same intrinsic

18  evidence… This can give rise to a different focus on what constitutes important claim terms for each

19  case and what constructions may be supported by the intrinsic evidence."  Opposition at 7.  *Aero*

20  *Prods. Int'l* does not stand for this rule.  In fact, the cited case does not even mention two separate

21  defendants having two varying claim constructions or arguments.  The only claim construction issue

22  on appeal before the Federal Circuit in *Aero Prods. Int'l* was the appeal of all defendants together of

23  the district court's claim construction.  Not once did the Federal Circuit's decision intimate that any of

24  the defendants proffered differing claim construction interpretations or arguments before the district

25  court of the Federal Circuit.  Even if they had, that does nothing to weaken Litepanels LLC's Motion

26  because Plaintiff will not be precluded from advancing different claim construction arguments than

27  those proffered by the Defendants (Gekko and Verizoom) in the currently filed cases in the Eastern

28  District of Texas.  In fact, Litepanels LLC welcomes those additional and varied arguments, as it will

1  assure that the Court will be able to craft a more effective claim construction ruling based on all

2  possible evidence.  The only effect consolidation of these cases will have is to create significant

3  judicial economy by allowing one Court to decide claim construction rather than waste multiple courts

4  time in that lengthy process and risk conflicting claim constructions.

5          For the foregoing reasons, judicial economy favors a transfer to the Eastern District of Texas.

## 2.    Swit's Declaratory Complaint Filing Was Both Anticipatory And Inappropriate Forum Shopping

6

7          Swit's claims that Litepanels LLC failed to follow through with its threats to sue in a timely

8  manner are without merit.  Swit anticipated Litepanels LLC's imminent suit and filed for declaratory

9  relief quickly after learning of Litepanels LLC's claims.  As in this case, "a suit is anticipatory when

10 the plaintiff filed its suit upon receipt of specific, concrete indications that a suit by the defendant was

11 imminent."  *Ward v. Follett Corporation*, 158 F.R.D. 645, 648 (N.D. Cal. 1994).  Such anticipatory

12 suits are disfavored because they are examples of forum shopping. *Mission Ins. Co. v. Puritan*

13 *Fashions Corp.,* 706 F.2d 599, 602 n. 3 (5th Cir. 1983).[8]  Filing a declaratory relief action after receipt

14 of an intent-to-sue letter favors a finding that the first-filed suit was done for anticipatory, forum

15 shopping purposes. *See Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir.1967).  By

16 recognizing this exception to the first-to-file rule, courts seek to eliminate the race to the courthouse in

17 an attempt to preempt a later suit in another forum. *Northwest Airlines v. American Airlines*, 989 F.2d

18 1002, 1007 (8th Cir. 1993).  Two "red flags" signal an anticipatory filing: (1) declaratory judgment

19 was filed after the other party gave notice of an intent to sue; and (2) the action declaratory judgment

20 rather than for damages or equitable relief. *Id.*  Here, the "red flags" could not be more apparent.

21

22

---

23 [8] *See also DeFeo v. Procter Gamble Co.,* 831 F. Supp. 776, 780 (N.D. Cal. 1993) (citing *Tempco Elec. Heater*

24 *Corp. v. Omega Engineering,* 819 F.2d 746, 749 (7th Cir. 1987) (declining to exercise jurisdiction over declaratory judgment action filed several days before infringement action); *Shell Oil Co. v. Frusetta,* 290 F.2d

25 689, 692 (9th Cir. 1961) (holding that purpose of the Declaratory Judgment Act was not to encourage a race to the courthouse); *Inherent.com v. Martindale-Hubbell,* 420 F. Supp. 2d 1093, 1097-98 (N.D. Cal. 2006) (finding

26 that a court may decline to hear declaratory judgment action for reasons of equity, when its filing evidences bad faith, anticipation or forum shopping; *British Telecomm plc v. McDonnell Douglas Corp.,* 1993 U.S. Dist.

27 LEXIS 6345, *3 (N.D. Cal. 1993) (holding that a party should not be "deprived of its traditional choice of forum because a [declaratory judgment plaintiff] with notice of an impending suit first files a declaratory relief action

28 over the same issue in another forum.").

1    As explained in Litepanels LLC's Motion, Litepanels LLC unsuccessfully attempted to deliver

2    its first cease-and-desist letter to Varizoom, Swit's distributor, on February 13, 2007.[9]  On March 27,

3    2007, Litepanels LLC's next cease-and-desist letter clearly explained that its "complaint against

4    [Swit's U.S. Importer / Distributor] **has already been prepared** and shortly the **entire matter will be**

5    **referred to Litepanels' litigation counsel**"[10].  Swit's Agent, Varizoom, immediately contacted Swit

6    and forwarded the letter to Swit.[11]  Litepanels received a faxed letter from the President of Swit's U.S.

7    distributor stating that it may "participate in a license", but that he was "leaving the country" and gone

8    for "most of the month of April" and finally returning "about May 7th [2007]".[12] Thus even if there

9    was a short delay in the filing Litepanels prepared lawsuit, Swit has only itself to blame. Moreover, a

10   separate cease-and-desist letter was hand delivered directly to Swit on April 17, 2007, further

11   confirming Litepanels clear and imminent intentions to file suit against Swit.[13]  Surely, this is not

12   undue delay and cannot have created any uncertainty for Swit or its distributor.  Suit was imminent.

13   Swit knew this and filed for declaratory relief in anticipation of suit.

14   Moreover, Litepanels LLC filed its suit against Swit just nine (9) business days after Swit filed

15   its declaratory relief action and before Swit served Litepanels LLC with its complaint.  Many courts

16   have declined jurisdiction when considerably more time has passed after the filing of an anticipatory

17   suit.[14]

18   Therefore, because Litepanels LLC clearly threatened imminent suit and Swit then immediately

19   filed for declaratory relief, this is clearly a case of anticipatory forum shopping.  Public policy dictates

20

21

22   [9] Declaration of Ken Fisher In Support Of Defendants Motion To Dismiss Or Transfer Venue ("Fisher Opening Decl.") at ¶¶4-5, Exh. B.

23   [10] Fisher Opening Decl. at ¶8, Exh. D.

24   [11] Fisher Opening Decl. at ¶9, Exh. E.

     [12] *Id.*

25   [13] Fisher Opening Decl. at ¶13, Exh. F.

26   [14] *DeFeo,* 831 F. Supp. at 780 (citing *Transamerica Occidental Life Ins. Co. v. DeGregorio,* 811 F.2d 1249, 1251 (9th Cir. 1987) (court declined to exercise jurisdiction over declaratory claims even though infringement

27   action not filed for over one month later); *Gribin v. Hammer Galleries, et. al.,* 793 F. Supp. 233, 234 (C.D. Cal. 1992) (court declined to exercise jurisdiction over declaratory claims even though no coercive case was then

28   pending).

1  that Swit not be rewarded for its inappropriate forum shopping and the case be transferred to the

2  Eastern District of Texas.

3  **3.     Swit and/or its U.S. Agent engaged in Bad Faith Negotiations**

4  Not only did Swit file its declaratory judgment action in anticipation of Litepanels LLC's

5  infringement action, Swit and its partner, Varizoom, attempted to entice Litepanels LLC to delay filing

6  its suit by claiming to be interested in settlement.  Where an alleged infringer entices the other party to

7  withhold suit during settlement negotiations, a declaratory judgment action will be dismissed or

8  transferred.  *Al-Or Int'l Ltd. v. Paul Morelli Design Inc.*, 54 U.S.P.Q.2d (BNA) 1191, 1194 (C.D.Cal.

9  1999) (finding that "exceptions to the "first-filed" rule include… defendant's good faith attempts at

10  settlement.").

11  In this case, Swit's exclusive U.S. Agent sent a letter to Litepanels LLC and its attorney stating

12  that it might "participate in a license" or "help Swit change its product to [Litepanels] satisfaction."[15]

13  In a subsequent phone call between Litepanels LLC and Varizoom, Varizoom indicated that it would

14  be willing to negotiate further with Litepanels LLC at another meeting in the future.[16]  With the ball

15  now squarely in Swit's court, and based on Swit's exclusive U.S. Agent's assertion that settlement was

16  possible, Litepanels LLC withheld filing the prepared complaint for patent infringement.  Litepanels

17  LLC own good faith accommodation towards Swit and its distributor gave Swit the opportunity to file

18  its own anticipatory declaratory judgment action while Litepanels LLC awaited Swit's response.  Swit

19  should not be rewarded for this deceit.

20  **4.     Convenience Factors Weigh Heavily in Favor of Transfer**

21  This Court may also transfer this action based on convenience to the parties or witnesses.  28

22  U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of

23  justice, a district court may transfer any civil action to any other district or division where it might

24  have been brought."  Swit's claim that the Northern District of California is more convenient than the

25  Eastern District of Texas is based only on attorney argument and ignores the facts of this case.  First,

26  

27  [15] Fisher Opening Decl. at ¶9, Exh. E.

28  [16] See Fisher Reply Decl. at ¶10.

1    Swit cites the proximity of Litepanels LLC's and Swit's attorneys to the courthouse. The location of

2    the parties' respective counsels is not to be considered in determining the parties' respective

3    conveniences. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (holding that "[t]he factor of

4    'location of counsel' is irrelevant and improper for consideration in determining the question of

5    transfer of venue.). Second, Swit attempts to trivialize the fact that Litepanels' LLC's Eastern District

6    of Texas suit also involves *Swit's* Texas-based exclusive U.S. distributor. Presumably, many of the

7    witnesses will come from the ranks of Varizoom and would not have to travel great distances to the

8    Texas courthouse. On the other hand, Varizoom's employees would have to travel and stay in

9    California if the case were to remain here.

10        With respect to the convenience to Litepanels LLC, Fred Holmes, a founding member and

11   current employee of Litepanels LLC will likely be the corporate representative witness (pursuant to

12   Fed. R. Civ. Proc. Rule 30(b)(6)) as to most litigation subject matters. Mr. Holmes resides in Eastern

13   Oklahoma which is just a 4.5 hour drive to Tyler, Texas[17]. Swit, however, points out that Litepanels

14   corporate office is in Los Angeles. Los Angeles is not in the Northern District of California. Had

15   convenience actually been Swit's motivating force, it would have brought this action in the Central

16   District of California, where Litepanels (and its own attorneys) reside. However, because Mr. Holmes,

17   a key figure in this litigation, resides in Oklahoma, neither the Central nor Northern Districts of

18   California are convenient.

19        With respect to the convenience to Swit, Swit is a Chinese company and would have to travel a

20   long distance whether the case is in California or Texas. This, combined with the Texas court's

21   intimate knowledge of the patents-in-suit would further speed resolution of this matter. Conversely, if

22   this case is not transferred, all parties would be subjected to delayed adjudication of their rights.

23

24

25

26

27

---

28   [17] *See* Declaration of Fred Holmes In Support Of Defendant's Reply ("Holmes Reply Decl.") at ¶5.

1

2

**D.     Swit Incorrectly Asserts That There Is Actual and Justiciable Controversy Regarding The '742 patent**

3

In its final argument, Swit claims that there is an actual and justiciable controversy because Litepanels is accusing Swit of infringing the '742 patent. However, this is incorrect because Litepanels, in its Texas complaint, did not accuse Swit of infringing the '742 patent.[18]  Moreover Litepanels has already agreed that it will not assert the 7,140,742 patent against Swit's current products.

4

5

6

7

In a similar case, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 35 USPQ2d 1139 (Fed. Cir. 1995), plaintiff sued for infringement and defendant counterclaimed for a declaratory judgment of invalidity and noninfringement. Plaintiff later decided to drop its claim, and unconditionally agreed that it would never assert the patents against any product that defendant was making as of the commencement of the litigation. The court held that this rendered defendant's declaratory counterclaim moot because there was no risk of future infringement liability.  The mere possibility of a future infringement suit based upon future acts was simply too speculative a basis for jurisdiction. *See also Intellectual Prop. Dev. Inc. v. TCI Cablevision of Calif. Inc.*, 246 F3d 1333, 58 USPQ2d 1681 (Fed. Cir. 2001).

8

9

10

11

12

13

14

15

16

**III.     CONCLUSION**

17

The Court should dismiss this action for improper venue pursuant to Fed. R. Civ. Proc. 12(b)(3).  In the alternative, the Court should transfer this action to the Eastern District of Texas pursuant to 28 U.S.C. §§ 1404 or 1406.

18

19

20

21

22

23

24

25

26

27

28

[18] *See* Fisher Reply Decl. at ¶4.

Case No. C-07-02645 JSW
LITEPANELS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS OR TRANSFER VENUE

12

1  The electronic filer hereby attests that the individual whose name appears has signed this

2  document.  See General Order 45, Section X.

3

4  Dated:  July 20, 2007                    Respectfully submitted,

5                                           HOWREY LLP

6

7                                           By:  /s/ Robert F. Kramer

8                                                Robert F. Kramer
                                                 Attorney for Defendant
9                                                LITEPANELS, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28