1  Henry C. Bunsow (SBN 60707)
   bunsowH@howrey.com
2  K.T. Cherian (SBN 133967)
   cherianK@howrey.com
3  Robert Kramer (SBN 181706)
   kramerR@howrey.com
4  HOWREY LLP
   525 Market Street, Suite 3600
5  San Francisco, California 94105
   Telephone: (415) 848-4900
6  Facsimile: (415) 848-4999

7  Joshua A. Burt (SBN 222302)
   burtj@howrey.com
8  HOWREY LLP
   550 South Hope Street, Suite 1100
9  Los Angeles, California 90071
   Telephone: (213) 892-1946
10 Facsimile: (213) 402-8137

11
   Attorneys for Defendants
12 LITEPANELS, LLC and LITEPANELS, INC.

13
                    IN THE UNITED STATES DISTRICT COURT
14
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
15
                          SAN FRANCISCO DIVISION
16

17 SWIT ELECTRONICS CO., LTD,              Case No. C-07-02645 JSW
                                           Jury Trial
            Plaintiff,
18
                                           LITEPANELS, LLC'S RENEWED MOTION
      vs.                                  TO DISMISS OR TRANSFER VENUE
19
20 LITEPANELS, LLC,                        Hearing Date:   September 14, 2007
                                           Time:           9:00 a.m.
            Defendant.                     Judge:          Hon. Jeffrey S. White
21                                         Courtroom:      2, 17th Floor

22

23
   TO PLAINTIFF AND ITS COUNSEL OF RECORD:
24
            PLEASE TAKE NOTICE that on September 14, 2007 at 9:00 a.m., or as soon thereafter as the
25
   matter may be heard in the above Court, located at 450 Golden Gate Avenue, San Francisco,
26
   California, before the Honorable Jeffrey S. White, United States District Court, Northern District of
27
   California, Defendants Litepanels, LLC and Litepanels, Inc. will move the Court to dismiss this action
28

HOWREY LLP

Case No. C-07-02645 JSW                         -1-
DEFENDANTS' RENEWED MOTION TO DISMISS OR
TRANSFER VENUE

1   or, in the alternative, transfer this action to the Eastern District of Texas.  This motion is based upon

2   the Declarations of Ken Fisher, Rudy Pohlert, and Robert Kramer filed June 15, 2007 and the

3   Declarations of Ken Fisher and Helen Craig filed July 20, 2007; the complete records and files of this

4   action; the arguments of counsel; and such additional evidence as the Court may consider.

5       Pursuant to Federal Rule of Civil Procedure 12(b)(3), Defendant respectfully requests that this

6   Court enter an order dismissing this action for improper venue.  Pursuant to Federal Rule of Civil

7   Procedure 12(b)(6), Defendant respectfully requests that this Court enter an order dismissing this

8   action against licensee Litepanels, Inc., as no justiciable controversy exists between Plaintiff Swit

9   Electronics Co., Ltd. and Defendant Litepanels, Inc.  In the alternative, Defendant respectfully requests

10  that this Court enter an order transferring this action to the Eastern District of Texas pursuant to 28

11  U.S.C. §§ 1404 or 1406.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   ISSUES TO BE DECIDED ........................................................................................... 2

III.  STATEMENT OF FACTS ............................................................................................ 3

    A.    The Parties. ........................................................................................................ 3

    B.    Swit's Patent Infringement And Litepanels, LLC's Cease And
         Desist Letters. .................................................................................................... 3

IV.   ARGUMENT ................................................................................................................. 5

    A.    Exclusive Licensee Status Does Not Create A Justiciable
         Controversy ........................................................................................................ 5

    B.    Declaratory Plaintiff Selected an Improper Venue To Resolve This
         Dispute ............................................................................................................... 6

    C.    Dismissal or Transfer Is Proper Under 28 U.S.C. 1406(a) ............................... 8

    D.    Alternatively, Transfer Is Proper Under 28 U.S.C. 1404(a) ............................. 8

         1.    The Texas Court Has Personal Jurisdiction Over Swit And
                Is Therefore An Appropriate Transferee District Under
                1406(a) and 1404(a) ........................................................................... 8

                a.    Litepanels' *Prima Facie Showing* Of Swit's
                        'Minimum Contacts' With Texas Defeats Swit's
                        Motion To Dismiss For Lack Of Personal
                        Jurisdiction. ....................................................................... 9

                b.    Swit Has "Minimum Contacts" in the State of
                        Texas ................................................................................ 10

         2.    "Fair Play and Substantial Justice" Support Jurisdiction. .................. 11

    E.    Convenience Favors Transfer To The Eastern District Of Texas .................... 12

    F.    The Interests Of Justice Favor Transfer To The Eastern District Of
         Texas ................................................................................................................ 12

    G.    Judicial Economy Favors A Change In Venue ................................................ 14

    H.    No Case In Controversy Regarding U.S. Patent No. 7,140,742 ...................... 16

V.    CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3D Sys., Inc. v. Aarotech Labs., Inc.,*
   160 F.3d 1373 (Fed. Cir. 1998) ........................................................................9

*Abrams Shell v. Shell Oil Co.,*
   165 F. Supp. 2d 1096 (C.D. Cal. 2001) ...........................................................8

*Akro Corp. v. Luker,*
   45 F.3d 1541 (Fed. Cir. 1995) ........................................................................10

*Alpine View Co. Ltd. v. Atlas Copco AB,*
   205 F.3d 208 (5th Cir. 2000) ..........................................................................10

*Amerada Petroleum Corp. v. Marshall,*
   381 F.2d 661 (5th Cir.1967) ...........................................................................13

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
   21 F.3d 1558 (Fed. Cir. 1994) ........................................................................10

*Boler Co. v. Ravdan Mfg., Inc.,*
   415 F. Supp. 2d 896 (N.D. Ill. 2006) ............................................................5, 6

*Brillhart v. Excess Ins. Co. of Am.,*
   316 U.S. 491 (1942) ........................................................................................12

*British Telecomm plc v. McDonnell Douglas Corp.,*
   1993 U.S. Dist. LEXIS 6345 (N.D. Cal. 1993) ............................................13

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ........................................................................................11

*Burstein v. State Bar of California,*
   693 F.2d 511 (5th Cir. 1982) ............................................................................9

*Continental Grain Co. v. Barge FBL -585,*
   364 U.S. 19 (1960) ..........................................................................................15

*DeFeo v. Procter Gamble Co.,*
   831 F. Supp. 776 (N.D. Cal. 1993) ...............................................................13

*Deprenyl Animal Health, Inc. v. U. of Toronto Innovations Found.,*
   297 F.3d 1343 (Fed. Cir. 2002) ........................................................................8

*Genentech, Inc. v. Eli Lilly & Co.,*
   998 F.2d 931 (Fed. Cir. 1993) ........................................................................15

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,*
   820 F. Supp. 503 (C.D. Cal. 1992) ..................................................................8

*Government Employees Ins. Co. v. Dizol,*
  133 F.3d 1220 (9th Cir. 1998) .................................................................................. 12

*Hanson v. Denckla,*
  357 U.S. 235 (1958) ................................................................................................. 10

*Hildebrand v. Steck Mfg. Co.,*
  279 F. 3d 1351 (Fed. Cir. 2002) ................................................................................ 8

*Hupp v. Siroflex of Am., Inc.,*
  848 F. Supp. 744 (S.D. Tex. 1994) ..................................................................... 10, 11

*Inamed Corp. v. Kuzmak,*
  249 F.3d 1356 (Fed. Cir. 2001) ................................................................................. 8

*Inherent.com v. Martindale-Hubbell,*
  420 F. Supp. 2d 1093 (N.D. Cal. 2006) ................................................................... 13

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
  456 U.S. 694 (1982) ................................................................................................... 9

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ................................................................................................... 9

*Intellectual Prop. Dev. Inc. v. TCI Cablevision of Califo. Inc.,*
  246 F.3d 1333 (Fed. Cir. 2001) ............................................................................... 16

*Jones v. GNC Franchising, Inc.,*
  211 F.3d 495 (9th Cir. 2000) ........................................................................... 8, 9, 14

*Kahn v. General Motors Corp.,*
  889 F.2d 1078 (Fed. Cir. 1989) ............................................................................... 13

*Koch Eng'g Co. v. Monsanto Co.,*
  621 F. Supp. 1204 (E.D. Mo. 1985) ......................................................................... 16

*Mission Ins. Co. v. Puritan Fashions Corp.,*
  706 F.2d 599 (5th Cir. 1983) ................................................................................... 13

*Northwest Airlines v. American Airlines,*
  989 F.2d 1002 (8th Cir. 1993) ................................................................................. 13

*Nynex Corp. v. Reuben H. Donnelley Corp.,*
  688 F. Supp. 128 (S.D.N.Y. 1988) ......................................................................... 5, 6

*Petty-Ray Geophysical Geosource, Inc.,*
  954 F.2d 1061 (5th Cir.), *cert. denied,* 506 U.S. 867 (1992) .................................... 9

*Product Promotions, Inc. v. Cousteau,*
  495 F.2d 483 (5th Cir. 1974) ..................................................................................... 9

*Regents of the Univ. of Cal. v. Eli Lilly & Co.,*
  119 F.3d 1559 (Fed. Cir. 1997) ............................................................................... 15

*Royal Queentex Enters. v. Sara Lee* Corp., No. C 99-4787, 2000 U.S. Dist.
  LEXIS 10139 (N.D. Cal. Mar. 1, 2000) ................................................................... 12

*Schlobohm v. Schapiro,*
    784 S.W.2d 355 (Tex. 1990) ...................................................................................... 8

*Shaffer v. Heitner,*
    433 U.S. 186 (1977) ............................................................................................... 10

*Shell Oil Co. v. Frusetta,*
    290 F.2d 689 (9th Cir. 1961) .................................................................................. 13

*Silent Drive, Inc. v. Strong Indus., Inc.,*
    326 F.3d 1194 (Fed. Cir. 2003) ................................................................................ 8

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988) ................................................................................................... 8

*Super Sack Mfg. Corp. v. Chase Packaging Corp.,*
    57 F.3d 1054 (Fed. Cir. 1995) ................................................................................ 16

*Technical Concepts L.P. v. Zurn Indus.,*
    No. 02 C 5150, 2002 WL 31433408 (N.D. Ill. Oct. 31, 2002) ............................... 15

*Tempco Elec. Heater Corp. v. Omega Engineering,*
    819 F.2d 746 (7th Cir. 1987) .................................................................................. 13

*VE Holding Corp. v. Johnson Gas Appliance Co.,*
    917 F.2d 1574 (Fed. Cir. 1990), *cert. denied*, 499 U.S. 922 (1991) ........................ 6

*Ward v. Follett Corporation,*
    158 F.R.D. 645 (N.D. Cal. 1994) ............................................................................ 13

*Wilson v. Belin,*
    20 F.3d 644 (5th Cir. 1994) ................................................................................. 9, 10

*World-Wide Volkswagon v. Woodson,*
    444 U.S. 286 (1980) ............................................................................................... 10

## STATUTES

28 U.S.C. § 1391(b)........................................................................................................ 6, 7

28 U.S.C. § 1391(c)........................................................................................................... 7

28 U.S.C. § 1400(a)........................................................................................................... 6

28 U.S.C. § 1404 ............................................................................................................. 16

28 U.S.C. § 1404(a)........................................................................................................... 8

28 U.S.C. § 1406 ............................................................................................................. 16

28 U.S.C. § 1406(a)....................................................................................................... 7, 8

35 U.S.C. § 271 .............................................................................................................. 10

## **RULES**

Fed. R. Civ. Pro. 12(b)(3).................................................................................................. 1, 6, 7, 16

Federal Rule of Civil Procedure 4(k)(2)................................................................................. 11

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3    Defendants Litepanels, LLC and Litepanels, Inc. (collectively "Defendants") respectfully

4    request that the Court dismiss this action under Fed. R. Civ. Pro. 12(b)(3), as declaratory Plaintiff Swit

5    Electronics Co., Ltd's ("Plaintiff") strategic selection of venue in the Northern District of California is

6    fatally flawed.  In the alternative, Defendants respectfully request that the Court transfer this action to

7    the Eastern District of Texas.

8    First, at the time of the filing of this action, Plaintiff and Defendants had no connection to the

9    Northern District of California and there is no allegation that any of the conduct underlying the claims

10    or defenses occurred in this district.  Second, Defendants have been litigating a patent infringement

11    suit on these patents since April 2006 against another infringer in the Eastern District of Texas,

12    involving the majority of the same patents as in this present case.  Furthermore, Defendants filed a

13    patent infringement suit against Swit and its Texas-based exclusive U.S. distributor just days after, and

14    without the knowledge that, Swit filed this preemptory action in the Northern District of California.

15    Both Texas actions are assigned to the same District Judge who will manage these cases, interpret the

16    patents claims and conduct jury trials on Litepanels' patents.  The parties are scheduled to serve

17    Markman briefs in October 2007 and a Markman hearing is scheduled to be held on these patents in

18    the earlier filed Texas action on November 1, 2007.

19    This patent dispute plainly belongs in the Eastern District of Texas and Swit should not be

20    rewarded for its decision to "race to the courthouse" after it learned that Defendants had prepared a

21    patent infringement complaint and would be taking imminent action to enforce its patents against Swit

22    and its Texas distributor Varizoom.  Thus, this case is anything but an ordinary declaratory judgment

23    action, and Swit is by no means a victim of uncertainty or delay in need of declaratory relief.  Rather,

24    Swit knew for certain that Litepanels would shortly be filing suit in Texas to stop Swit's infringing

25    activities.

26    Swit's use of a preemptive declaratory judgment suit and blatant forum shopping should not be

27    permitted.  Courts routinely dismiss declaratory judgment actions under such circumstances.  If

28    transfer were not granted, two separate federal judges would need to become familiar and preside over

1 litigation of many of the same issues in separate forums, at similar times, resulting in substantial

2 duplication of effort, and an increased risk of inconsistent rulings or judgments.  In this case, every

3 relevant factor of the Declaratory Judgment Act weighs strongly in favor of dismissal or transfer.

## II.     ISSUES TO BE DECIDED

5          There are four issues to be decided in this motion:

6          1.      Whether the Court has declaratory judgment jurisdiction over Litepanels, Inc. and

7 Litepanels, LLC.

8          2.      Whether venue is improper in the Northern District of California and the case should be

9 dismissed or transferred where (1) Defendants do not reside in the district; and (2) no events giving

10 rise to plaintiff Swit's claims occurred in the district.

11         2.      Whether no actual and justiciable controversy existed between Swit, Litepanels, LLC,

12 and Litepanels, Inc. concerning U.S. Patent No. 7,140,742 because Litepanels is not asserting that Swit

13 infringes the '742 patent.

14         3.      Whether the Court should exercise its discretion and decline to hear Swit's declaratory

15 judgment claim that Litepanel's '823, '742 and '302 patents are not infringed and invalid because Swit

16 improperly used the Declaratory Judgment Act as a means to forum shop knowing that Defendants

17 were preparing to file a patent infringement suit in Texas and did, in fact, file such suit a few days after

18 this California action was filed.

19         4.      Whether the Court should transfer Swit's declaratory judgment claim that Defendants'

20 '823, '742 and '302 patents are not infringed and invalid to the Eastern District of Texas under 28

21 U.S.C. §§ 1404 and/or 1406 because that Court is presiding over two patent infringement cases

22 involving these same patents, one involving these same parties and will fully resolve the parties' patent

23 infringement dispute.[1]

---

[1] On May 29, 2007, Defendants filed a patent infringement action against Swit, Swit's Texas
distributor Varizoom, its principal Mr. Thomas McKay, and on June 14 joined as a defendant
Varizoom's affiliated corporation, Tom's Way Corp., captioned Litepanels v. McKay et al., Case No.
6:07-CV-239 LED, accusing these defendants of infringing Litepanel's '823 and,'302 patents. These
are two of the three patents-in-suit in this California action.  Litepanels does not accuse Swit of
infringing Litepanels' '742 patent and, accordingly, Swit's claim for a declaration regarding that patent
should be dismissed from this action.

III.    **STATEMENT OF FACTS**

A.    **The Parties.**

Plaintiff Swit Electronics is a Chinese corporation, with its principal place of business in Nanjing, China, that manufactures and sells lighting products, including the S2000 and S2010 products, through its Texas distributor.  (Complaint, ¶¶ 9, 11-13.)  Swit does not allege in the Complaint that it has offices, employees, business operations, distributors, or connection of any kind with the Northern District of California.  (Complaint, ¶ 2.)  Swit's exclusive distributor in the United States is a Texas company, Varizoom Lens Controls, and its affiliate Tom's Way, Inc., both located in the State of Texas.  (Declaration of Ken Fisher dated June 15, 2007, ¶ 3, Exh. A ("Fisher Decl.").)

Litepanels, LLC is a Los Angeles technology and licensing company that owns the '823, '742 and '302 patents-in-suit.  Litepanels has no office, facilities, business operation, and does not and has never conducted business in the Northern District of California.  (Fisher Decl. ¶ 2.)

Litepanels, Inc., a separate entity, is a Los Angeles manufacturer of lighting equipment. (Declaration of Helen Craig filed July 20, 2007, ¶ 2 ("Craig Reply Decl.")).  It has no offices, employees, or other business operations in the Northern District of California.  *Id.* at ¶ 3.  As of May 17, 2007, the day Swit filed suit, Litepanels, Inc. did not have any dealers located in the Northern District of California.  *Id.* at ¶ 4.  Neither Litepanels, LLC or Litepanels, Inc. own any part of the other entity.  *Id.* at ¶ 6.

B.    **Swit's Patent Infringement And Litepanels, LLC's Cease And Desist Letters.**

On February 13, 2007, Litepanels, LLC's intellectual property attorney sent a letter to Varizoom identifying Litepanels two patents and requesting that Varizoom respect Litepanels' intellectual property.  (Fisher Decl. ¶ 4, Exh. B.)  Despite Swit's assertions to the contrary, this letter was clearly sent by Litepanels, LLC–not Litepanels, Inc.  Litepanels' February 13, 2007 letter was delivered to Varizoom's Showroom address by Federal Express, but was later refused and returned to Litepanels.  (Id.)

On March 19, 2007, before this action was filed, Litepanels, LLC, through a representative in Plano, Texas, purchased one of Swit's infringing light product, model S-2010 LED on-camera light,

1   through Swit's Texas-based exclusive United States distributor Varizoom.  The representative

2   purchased this product on Varizoom's web site.  (Fisher Decl. ¶ 6.) (*see* www.varizoom.com).

3       On or about March 21, 2007, Litepanels, LLC (not Litepanels, Inc.) sent another letter to

4   Varizoom requesting that it cease and desist from offering and selling infringing Swit lighting products

5   models S2010 and S2000.  Litepanels, LLC's March 21, 2007 letter was sent via email, and Federal

6   Express.  (Fisher Decl. ¶ 7, Exh. C.)

7       On March 23, 2007, Litepanels, LLC received a telephone call from Mr. Tom McKay, the

8   principal of Varizoom, who indicated that he had received Litepanels, LLC's cease and desist letter.

9   He further stated that he had reviewed our patents and that he would contact Swit to review the patents

10  as well.  He also stated that Swit may be interested in a licensing agreement involving the Litepanels,

11  LLC's patents. (Declaration of Rudy G. Pohlert dated June 15, 2007, ¶ 2.)

12      On or about March 27, 2007 Litepanels, LLC (not Litepanels, Inc.) sent yet another letter to

13  Varizoom demanding that Varizoom ensure that the infringing Swit lighting products not be shown at

14  an upcoming National Association of Broadcasters tradeshow ("NAB") in Las Vegas, Nevada that was

15  to be held on April 16-19, 2007.  (Fisher Decl. ¶ 8, Exh. D.)  Litepanels, LLC further indicated that a

16  complaint for patent infringement had been prepared and that shortly the matter would be referred to

17  litigation counsel.  (Id.)  On March 28, 2007, Litepanels, LLC received a fax from Mr. McKay

18  confirming receipt of Litepanels, LLC's cease and desist demands.  (Fisher Decl., Exh. E.)

19      On or around March 29, 2007, Litepanels, LLC's manager, Mr. Ken Fisher, spoke with

20  Varizoom's president, Mr. McKay, who indicated that he had no interest in entering into patent

21  litigation with Litepanels, LLC and stated that he would agree to Litepanels, LLC's cease and desist

22  terms.  (Fisher Decl. ¶ 10.)  Mr. Fisher stated that the claims in Litepanels, LLC's patents are detailed

23  and readily understandable, and suggested that they be reviewed by Varizoom's patent attorney.  (Id.)

24  Varizoom's president stated that he would agree to Litepanels, LLC's cease and desist demands, and

25  requested that Litepanels, LLC also consider a license agreement on the Swit products.  (Id.)

26      On April 16, 2007, at the NAB trade show, despite the promises of Mr. McKay, Swit's

27  infringing lighting products were displayed at Swit's trade show booth.  (Fisher Decl. ¶ 11, Exh. A.)

28  Litepanels, LLC learned that Swit was telling potential customers at the trade show that Varizoom is

1  still selling the infringing lighting products, models S2010 and S2000, despite Mr. McKay's written

2  assurances made to Litepanels, LLC.  (Fisher Decl. ¶ 12.)

3      On April 17, 2007, Litepanels, LLC (not Litepanels, Inc.) hand delivered a letter to Swit

4  requesting that Swit remove the infringing products from its booth at the NAB trade show and further

5  stating that Litepanels, LLC will vigorously enforce its patents.  (Fisher Decl. ¶ 13, Exh. F.)

6      More recently, on June 14, 2007, Litepanels, LLC, through a representative in Longview

7  Texas, acquired a separate-model Swit S-2000 LED on camera light, via one of Varizoom's Internet

8  dealers Adorama (www.adorama.com).  (Fisher Decl. ¶ 14.)

9  **IV.    ARGUMENT**

10     **A.    Exclusive Licensee Status Does Not Create A Justiciable Controversy**

11     Swit commenced this action on May 17, 2007 by filing a Complaint against Litepanels, LLC,

12  the owner of the patents-in-suit.  Litepanels, LLC, which is a licensing company that has no connection

13  with the Northern District of California, is the entity that Swit contends threatened to assert these

14  patents against Swit.  Litepanels, LLC moved to dismiss this action on June 15, 2007 demonstrating

15  that the parties had no connection with this district.  On July 24, 2007, Swit filed an Amended

16  Complaint adding Litepanels, Inc. as a defendant to try to manufacture some tenuous connection with

17  this district to oppose this renewed Motion to Dismiss or Transfer.  As demonstrated below,

18  Litepanels, Inc. does not have sufficient contacts with the Northern District of California to establish

19  personal jurisdiction.  In any event, it is also not a proper party to this action under applicable law.

20     Swit, in its First Amended Complaint, states that Litepanels, Inc. is the "exclusive licensee"

21  with respect to the Litepanels, LLC patents (First Amended Complaint at ¶4), but this allegation does

22  nothing to supply this Court with subject matter jurisdiction over Swit's declaratory judgment claim

23  against Litepanels, Inc.  An exclusive licensee status does not create a justiciable controversy where an

24  exclusive licensee was not involved in the pre-litigation conduct that made declaratory relied possible.

25  *see Boler Co. v. Ravdan Mfg., Inc.,* 415 F. Supp. 2d 896, 904-905 (N.D. Ill. 2006).  In *Boler*, the

26  plaintiff also sought declaratory judgment of noninfringement of a patent. The plaintiff's declaratory

27  judgment action was brought against the patentee and its exclusive licensee.  The Court held that an

28  exclusive licensee with the right to sue could not be made a declaratory judgment defendant if the

1  exclusive licensee was not involved the acts leading up to suit. *Id.*, *see also Nynex Corp. v. Reuben H.*
2  *Donnelley Corp.,* 688 F. Supp. 128, 131 (S.D.N.Y. 1988).

3      In this case, Litepanels, LLC's counsel wrote all the cease and desist letters to Swit's Texas
4  distributor. Litepanels, Inc. was never involved until after Swit filed for declaratory judgment.
5  Without specific threatening actions by Litepaenls, Inc., there was no threat of suit by Litepanels, Inc.
6  and Swit has no grounds for seeking declaratory relief against it. Therefore, there is no basis for this
7  Court's exercise of jurisdiction over Litepanels, Inc. and any evidence of its contacts with the Northern
8  District of California are irrelevant. *Boler,* 415 F. Supp. 2d at 904-905; *Nynex,* 688 F. Supp. at 131.

9

10      **B.    Declaratory Plaintiff Selected an Improper Venue To Resolve This Dispute**

11      The Court should dismiss plaintiff's declaratory action under Fed. R. Civ. Pro. 12(b)(3) as
12  Swit's selection of venue in the Northern District of California is fatally flawed. Plaintiff seeks a
13  declaration of non-infringement of a patent and, therefore, venue is governed by the general venue
14  statutes, not the special venue statute for patents 28 U.S.C. § 1400(a). *See VE Holding Corp. v.*
15  *Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed. Cir. 1990), *cert. denied*, 499 U.S. 922 (1991).

16      Plaintiff alleges that subject matter jurisdiction in this action is based on federal law relating to
17  patents and not on diversity of citizenship. (Complaint, ¶ 5.) Venue is, therefore, controlled by 28
18  U.S.C. § 1391(b), which provides in relevant part that a civil action may be brought *only* in a judicial
19  district (emphasis added):

20      (1)    where the defendant resides;
21      (2)    in which a substantial part of the events giving rise to the claim occurred, or a
22             substantial part of the property that is the subject of the action is situated; or
23      (3)    in which any defendant may be found, if there is no district in which the action may
24             otherwise be brought.

25      The first and third bases for venue are readily disposed of here. Neither Defendant resides in
26  this judicial district. Both Defendants have resided in the Central District of California since their
27  inception. In addition, whether or not Litepanels can be "found" in this district, there is another district
28  — the Eastern District of Texas or the Central District of California — where this action could

1  otherwise have been brought.  Similarly, there is no property situated in the district that is the subject

2  of this action.

3      Under 28 U.S.C. § 1391(c), the Court must only consider the question of proper venue with the

4  facts that existed at the time of the filing of this case and not later.  (28 U.S.C. § 1391(c) provides that

5  "For the purposes of venue under this chapter, a defendant that is a corporation shall be deemed to

6  reside in any judicial district in which it is subject to personal jurisdiction **at the time the action is**

7  **commenced**" (emphasis added).)  In its Opposition to Litepanels, LLC's earlier Motion to Dismiss or

8  Transfer Venue, Swit argued that Litepanels, Inc.'s contacts with CA Media in Northern California

9  made venue in the Northern District of California proper.  Even assuming that Swit's only evidence

10  were admissible, in reality, CA Media was not a dealer for Litepanels Inc. (again, a party which the

11  Court does not have declaratory jurisdiction over) ***at the time the filing*** of this litigation.  In fact, CA

12  Media became a dealer on June 7, 2007, well after the original complaint for this declaratory judgment

13  action was filed.  (*See* Craig Reply Decl. at ¶5.).  Therefore, any contact that occurred after the filing of

14  the original complaint is immaterial.  If Swit were to rely on the date of filing for its Amended

15  Complaint, that date would be after Defendants earlier filed complaint in the Eastern District of Texas

16  – making Defendants the first to file.  Under either interpretation, Defendants prevail.

17

18

19      Furthermore, venue is appropriate under subsection (2) of 28 U.S.C. § 1391(b) only if a

20  substantial part of the events giving rise to the claim occurred in the Northern District of California.

21  They did not.  The events giving rise to Plaintiff's claim are outlined in paragraph 9 of Swit's

22  Complaint, and consist of Litepanels, LLC's counsel making a clear and imminent threat to sue Swit

23  for infringing activities if they continued their existing activities.  This threat was made in letters sent

24  to Swit's distributor in Texas and at a tradeshow in Nevada, against a Chinese company.  (Fisher Decl.

25  ¶¶ 4-13).  Accordingly, venue is not proper in this Judicial District and therefore dismissal under Fed.

26  R. Civ. Pro. 12(b)(3), or transfer under 28 U.S.C. § 1406(a) is appropriate.

27

28

1    **C.    Dismissal or Transfer Is Proper Under 28 U.S.C. 1406(a)**

2    Under 28 U.S.C. § 1406(a), a district court has two choices when venue is improper: it (1)

3    "shall dismiss," or (2) "if it be in the interest of justice, transfer such case to any district ... in which it

4    could have been brought." *See Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal.

5    2001). As set forth above, venue in this district is improper as to both Defendants. If the Court declines

6    to dismiss this action for improper venue, it can transfer this action to Texas under 28 U.S.C. § 1406(a)

7    where it could have been brought.  Specifics related to the Eastern District of Texas being a proper

8    district are discussed below.

9    **D.    Alternatively, Transfer Is Proper Under 28 U.S.C. 1404(a)**

10    Section 1404(a) provides discretionary grounds for transferring an action if a court determines

11    that venue is proper in this district, but for convenience or judicial efficiency the action should be

12    transferred to another district where the action could have been filed.  Section 1404(a) provides that,

13    "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer

14    any civil action to any other district or division where it might have been brought." *See Goodyear Tire*

15    *& Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992).  Courts have

16    broad authority to transfer cases under § 1404(a).  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495,

17    498 (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  Here, both

18    convenience and the interest of justice favor transfer to the Eastern District of Texas.

19    **1.    The Texas Court Has Personal Jurisdiction Over Swit And Is Therefore An Appropriate Transferee District Under 1406(a) and 1404(a)**

20    

21    An action may be transferred to any district where it "might have been brought."  28 U.S.C. §

22    1404(a).  The determination whether the Texas district court has personal jurisdiction over defendants

23    in a patent infringement case involves two inquiries. First, whether jurisdiction exists under the state

24    long-arm statute. See *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003);

25    *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349-50 (Fed.

26    Cir. 2002); *Hildebrand v. Steck Mfg. Co.*, 279 F. 3d 1351, 1354 (Fed. Cir. 2002). Second, if such

27    jurisdiction exists, whether its exercise would be consistent with the limitations of the due process

28

1   clause.  See *Silent Drive*, 326 F.3d at 1201; *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359-60 (Fed.

2   Cir. 2001).

3        Because Texas' long-arm statute is coextensive with the limits of federal due process, the only

4   inquiry is whether or not exercising personal jurisdiction over the defendant in Texas comports with

5   due process.  *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990); *3D Sys., Inc. v. Aarotech*

6   *Labs., Inc.,* 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). The assertion of jurisdiction is consistent with

7   the federal due process if two requirements are met. First, "the nonresident defendant must have

8   purposefully availed himself of the benefits and protections of the forum state by establishing

9   'minimum contacts' with that forum state." *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994) (citing

10  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Second, "the exercise of jurisdiction over the

11  nonresident defendant must not offend 'traditional notions of fair play and substantial justice.'" *Id.*

12                         a.    **Litepanels' *Prima Facie* Showing Of Swit's 'Minimum Contacts'**
                                 **With Texas Defeats Swit's Motion To Dismiss For Lack Of Personal**
13                               **Jurisdiction.**

14       While Defendants bear the burden of establishing personal jurisdiction, "only a *prima facie*

15  case must be established; proof by a preponderance is not required." *Jones v. Petty-Ray Geophysical*

16  *Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir. 1992), *cert. denied,* 506 U.S. 867 (1992). Any genuine,

17  material conflicts between the facts as established by the respective parties' appropriate affidavits, and

18  other proper summary judgment type evidence, must be resolved in favor of jurisdiction. *Id.*  Further,

19  Defendants, need not establish all facts necessary to support a cause of action for the court to exercise

20  personal jurisdiction in the transferee forum over Swit.  *Product Promotions, Inc. v. Cousteau,* 495

21  F.2d 483, 490 (5th Cir. 1974), *overruled on other grounds by Ins. Corp. of Ireland v. Compagnie des*

22  *Bauxites de Guinee*, 456 U.S. 694 (1982), *as stated in Burstein v. State Bar of California*, 693 F.2d

23  511, 518 n. 12 (5th Cir. 1982).

24       Here, Swit has advertised and offered the accused products for sale in Texas via an interactive

25  website that links consumers to Swit's Texas-based U.S. distributor Varizoom.  (Fisher Decl. ¶ 3.)

26  Swit has purposefully placed the accused products in the stream of commerce with the expectation that

27  its products would be purchased by Texas consumers, through its Texas Distributor. In fact, Swit made

28

1    at least one known sale of the accused products to a Litepanels, LLC representative located in the

2    Eastern District of Texas through Varizoom.  (Fisher Decl., ¶ 6.)

3              **b.    Swit Has "Minimum Contacts" in the State of Texas.**

4              A defendant has "minimum contacts" with the forum when it has "purposely avails itself of the

5    privilege of conducting activities within the forum State, thus invoking the benefits and protections of

6    its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). The "minimum contacts" aspect of due

7    process can be satisfied by a finding of either specific jurisdiction or general jurisdiction. *Wilson,* 20

8    F.3d at 647. Specific jurisdiction over a nonresident corporation exists when the plaintiff demonstrates

9    the defendant purposefully directed its activities at the forum state and the plaintiff's claim arises out

10   of those activities. *Akro Corp. v. Luker,* 45 F.3d 1541, 1545-46 (Fed. Cir. 1995). Here again, Swit

11   cannot credibly argue that it did not avail itself of conducting activities within Texas, as Swit

12   specifically chose to base its U.S. operations in Texas, through its Texas-based U.S. distributor.

13             Moreover, when a nonresident's contact with the forum state "stems from a product, sold or

14   manufactured by the foreign defendant, which has caused harm in the forum state, the court has

15   jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the

16   expectation that it would be purchased by or used by consumers in the forum state." *Alpine View Co.*

17   *Ltd. v. Atlas Copco AB,* 205 F.3d 208, 216 (5th Cir. 2000) (citing *World-Wide Volkswagon v.*

18   *Woodson,* 444 U.S. 286, 298 (1980)). Additionally, even when the defendant lacks control over

19   distribution of the product in the forum state, that lack of control will not bar jurisdiction when the

20   plaintiff has alleged an intentional tort. *Hupp v. Siroflex of Am., Inc.,* 848 F. Supp. 744, 748 (S.D. Tex.

21   1994). Thus, there must be a connection between defendant's contacts with Texas and plaintiff's

22   causes of action. *Id.; see also Shaffer v. Heitner,* 433 U.S. 186, 204 (1977). Examples of such

23   connections would be allegations that the wrongful acts occurred in Texas. *See Alpine View,* 205 F.3d

24   at 217.

25             As noted by the court in *Hupp v. Siroflex of America, Inc.,* the Texas long-arm statute allows a

26   court to exercise personal jurisdiction over a nonresident that commits a tort in Texas. 848 F. Supp. at

27   746. Patent infringement is a tort, and its injury occurs in the state where the infringing article is sold.

28

1   *Id.* at 747; *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed. Cir.

2   1994).

3        Defendants allege in the Texas complaint that Swit has infringed the '302 patent and '823

4   patent under 35 U.S.C. § 271 by selling or offering to sell infringing products either directly,

5   indirectly, and/or through acts of third parties.  (Declaration of Robert F. Kramer dated June 15, 2007

6   ("Kramer Decl."), Exh. A at ¶¶ 9-12.)  Litepanels also alleges that Swit sells these products either

7   directly or through its distributors. Specifically, Swit sells its products, including the accused products,

8   in Texas through its exclusive distributor Varizoom. Varizoom also operates a website, varizoom.com,

9   that has advertised and made Swit's products available for purchase via the website. Swit's corporate

10  website, www.swit-battery.com, identifies Texas-based Varizoom as its *sole* United States [distributor]

11  dealer.  Accordingly, any Texas resident can purchase Swit products over the Internet and have the

12  products shipped solely within the State of Texas.  The evidence clearly establishes that Swit has

13  offered the accused products for sale in Texas and thus committed the tort of patent infringement in

14  Texas. Clearly specific jurisdiction exists over Swit in Texas.

15            **2.    "Fair Play and Substantial Justice" Support Jurisdiction.**

16       Lastly, the Court must determine whether asserting personal jurisdiction over Swit in Texas

17  would violate notions of fair play and substantial justice. This requires the court to consider:

18       the burden on the defendant, the forum State's interest in adjudicating the dispute, the
         plaintiff's interest in obtaining convenient and effective relief, the interstate judicial
19       system's interest in obtaining the most efficient resolution of controversies, and the
         shared interest of the several States in furthering fundamental substantive social
20       policies.

21  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985) (internal quotations omitted).

22       Here, assertion of personal jurisdiction over Swit would not violate notions of fair play and

23  substantial justice.  Texas has a substantial interest in adjudicating this dispute because Swit purposely

24  directed its infringing activities to Texas residents. It would be patently unfair, under these

25  circumstances, to allow Swit's Texas-based distributor to actively sell an infringing product with

26  impunity without being held accountable in that state. *See Hupp*, 848 F. Supp. at 748. To conclude

27  otherwise would "encourage blatant infringement and severely impair" Litepanels' ability to enforce

28  its patents and other intellectual property rights. *Id.* at 749.  As outlined herein, the Texas judicial

1  system can also better resolve the controversy in a judicially efficient manner insofar as a district judge

2  in Texas is already presiding over a patent infringement action involving the same patents that will

3  require claim construction by that district judge.

4       In the alternative, pursuant to the Constitution and laws of the United States (including Federal

5  Rule of Civil Procedure 4(k)(2)), the Texas Court has personal jurisdiction over Swit, even if Swit is

6  not subject to the jurisdiction of the courts of general jurisdiction of any state.

7       **E.    Convenience Favors Transfer To The Eastern District Of Texas**

8       Swit's Texas-based agent and distributor Varizoom is a necessary party in this dispute because

9  it has imported and sold Swit's allegedly infringing products in the United States — even doing so

10  under its own brand name.  Thus, Varizoom is a co-infringer of Litepanels, LLC's patents.

11      As Varizoom is a Texas company, the relevant employees of Varizoom are ostensibly residents

12  of Texas. The Eastern District of Texas is over a thousand miles closer and substantially more

13  convenient for Swit's agent Varizoom and its employees than the Northern District of California.

14  (Varizoom would have to travel over twenty-two hundred extra miles to get to, and from, the Northern

15  District of California.) Moreover, Defendants have pre-existing litigation involving the same patents in

16  Texas. As such, Defendants will already be attending hearings in Texas, and can therefore take

17  depositions of the Varizoom employees at the same time.  These conveniences favor transfer to the

18  Eastern District of Texas.

19      Moreover, Swit cannot complain that it is inconvenient to litigate in Texas.  Swit specifically

20  chose the State of Texas to base its U.S. operations by its selection of its exclusive U.S. distributor in

21  Texas.  Swit should be bound to resolve this dispute in the state that it itself chose.  When the interests

22  of all relevant parties and other factors are taken into account, the balance of conveniences

23  unquestionably tips in favor of the Eastern District of Texas.  Swit's declaratory judgment action has

24  nothing to do with convenience—and everything to do with forum shopping.

25      **F.    The Interests Of Justice Favor Transfer To The Eastern District Of Texas.**

26      Moreover, in determining whether to retain declaratory actions, courts are guided by certain

27  "touchstone" factors, including whether the action is the result of "forum shopping". *Gov't Employees*

28  *Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998) (referring to factors set forth in *Brillhart v.*

1   *Excess Ins. Co. of Am.,* 316 U.S. 491, 495 (1942)).  Transfer would promote justice by defeating Swit's

2   attempt to gain unfair advantage by forum shopping.  A plaintiff's chosen forum deserves little

3   deference when the plaintiff has engaged in forum shopping. *See Royal Queentex Enters. v. Sara Lee*

4   *Corp.,* No. C 99-4787, 2000 U.S. Dist. LEXIS 10139, at *10 (N.D. Cal. Mar. 1, 2000).

5          As in this case, "a suit is anticipatory when the plaintiff filed its suit upon receipt of specific,

6   concrete indications that a suit by the defendant was imminent." *Ward v. Follett Corporation*, 158

7   F.R.D. 645, 648 (N.D. Cal. 1994).  Such anticipatory suits are disfavored because they are examples of

8   forum shopping. *Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 602 n. 3 (5th Cir. 1983).[2]

9   Filing a declaratory relief action after receipt of an intent-to-sue letter favors a finding that the first-

10  filed suit was done for anticipatory, forum shopping purposes. *See Amerada Petroleum Corp. v.*

11  *Marshall*, 381 F.2d 661, 663 (5th Cir.1967).  By recognizing this exception to the first-to-file rule,

12  courts seek to eliminate the race to the courthouse in an attempt to preempt a later suit in another

13  forum. *Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1007 (8th Cir. 1993).  Two "red flags"

14  signal an anticipatory filing: (1) declaratory judgment was filed after the other party gave notice of an

15  intent to sue; and (2) the action declaratory judgment rather than for damages or equitable relief. *Id.*

16  Here, the "red flags" could not be more apparent.

17         Here again, a red flag is raised by Swit's own actions, as it made a strategic decision to select a

18  venue with no connection to any of the parties, and in a district where no unique operative facts exist

19  or occurred.  Restated, Swit could have chosen to file it action Central District of California where

20  Defendant Litepanels resides, yet it did not.  Allowing Declaratory Plaintiff to maintain this action

21

22  _____

23  [2] *See also DeFeo v. Procter Gamble Co.,* 831 F. Supp. 776, 780 (N.D. Cal. 1993) (citing *Tempco Elec. Heater Corp. v. Omega Engineering,* 819 F.2d 746, 749 (7th Cir. 1987) (declining to exercise

24  jurisdiction over declaratory judgment action filed several days before infringement action); *Shell Oil Co. v. Frusetta,* 290 F.2d 689, 692 (9th Cir. 1961) (holding that purpose of the Declaratory Judgment

25  Act was not to encourage a race to the courthouse); *Inherent.com v. Martindale-Hubbell,* 420 F. Supp. 2d 1093, 1097-98 (N.D. Cal. 2006) (finding that a court may decline to hear declaratory judgment

26  action for reasons of equity, when its filing evidences bad faith, anticipation or forum shopping); *British Telecomm plc v. McDonnell Douglas Corp.,* 1993 U.S. Dist. LEXIS 6345, *3 (N.D. Cal. 1993)

27  (holding that a party should not be "deprived of its traditional choice of forum because a [declaratory judgment plaintiff] with notice of an impending suit first files a declaratory relief action over the same

28  issue in another forum.").

Case No. C-07-02645 JSW                          -13-
DEFENDANTS' RENEWED MOTION TO DISMISS OR
TRANSFER VENUE

1  would also contravene the purpose of the Declaratory Judgment Act by encouraging forum shopping.

2  *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (noting forum shopping

3  "may justify a departure from the first-filed rule of priority").  As such, declaratory Plaintiff's chosen

4  forum should be given little consideration here because Defendants do not reside in this District and

5  this forum lacks a significant connection, much less any connection to the claims asserted in this

6  action.

7        Conversely, transferring the present action to the Texas serves both the public's interest, and the

8  interests of justice, as it would allow consolidation and/or coordination with the aforementioned pre-

9  existing Texas lawsuit (covering the same patents) and therefore promote judicial economy. Transfer

10  of this case would avoid duplicative discovery litigation and prevent wasted time and money, all

11  factors that support transfer. *See, e.g.*, *Jones*, 211 F.3d at 498.  Indeed, because the patents involved in

12  Swit's California declaratory action against Litepanels are already part of a related Texas lawsuit that

13  has been pending for over a year, the Eastern District of Texas is the only district that can completely

14  resolve the dispute between the parties in a judicially economic fashion.

15        Moreover, Swit's forum shopping is particularly egregious in this case because Swit was fully-

16  informed that Litepanels, LLC's lawsuit complaint was already prepared and that shortly the entire

17  matter would be referred to Litepanels' litigation counsel.  (Fisher Decl. ¶ 8.)  Yet, Swit still chose to

18  pursue its declaratory judgment claims in another forum unrelated to any party or underlying action.

19  The Court should reject Swit's blatant forum shopping attempt, and may do so by transferring the

20  declaratory judgment action to the Eastern District of Texas.

21        **G.    Judicial Economy Favors A Change In Venue.**

22        It is well recognized and common sense that in appropriate circumstances such as these patent

23  cases should be transferred to a court that already has a familiarity with the key issues and evidence

24  resulting from previous litigation involving the same patents.  Judge Davis is already presiding over a

25  related patent action filed in Eastern District of Texas — *Litepanels v. Gekko*, 2:06-CV-167 LED,

26  involving these patents. (Kramer Decl. ¶ 4, Exhs. B - D)

27        This earlier-filed case in Texas will raise the same claim construction, validity, and

28  unenforceability issues that would be raised here.  Importantly, the co-pending *Litepanels v.*

1    *Varizoom/Swit* infringement action (6:07-CV-239 LED) in Texas is already assigned to Judge Davis.

2    Thus, allowing Swit's Northern California case to proceed, while the related Gekko case is *already*

3    underway and being litigated in the Eastern District of Texas will unquestionably duplicate judicial

4    resources and create a risk of having inconsistent rulings on claim construction, validity, and

5    unenforceability of the Litepanels, LLC's patents.

6        Here, while the defendants are different, the patents at issue are the same, and thus the

7    argument for transfer is even stronger. Court recognize that the special need for uniformity in patent

8    cases strongly favors transfer. Besides being a duplicative use of scarce judicial resources, a second

9    claim construction would risk inconsistent claim constructions, create greater uncertainty regarding the

10   patent's scope, and impede the administration of justice.

11       Furthermore, a great deal of complex technical evidence relating to Litepanels patents will

12   overlap between this litigation and the previously-filed case pending in the Eastern District of Texas.

13   Accordingly, Judge Davis is acquiring ongoing familiarity with all of these materials and issues as this

14   2006 case is now approaching its Markman hearing and subsequent trial. Moreover, public interest

15   strongly supports transfer to avoid duplication of such effort by this Court. Here, in contrast, this

16   California Court will have no such substantive efficiencies. *See also Regents of the Univ. of Cal. v. Eli*

17   *Lilly & Co*., 119 F.3d 1559, 1565 (Fed. Cir. 1997) (noting in a patent case that "the interest of justice,

18   which includes judicial economy, may be determinative to a particular transfer motion, even if the

19   convenience of the parties and witnesses might call for a different result.") (internal quotations and

20   citation omitted).

21       Additionally, transfer is particularly appropriate when the two litigations in question are

22   proceeding concurrently. *See Cont'l Grain Co. v. Barge FBL -585,* 364 U.S. 19, 26 (1960) ("To permit

23   a situation in which two cases involving precisely the same issues are simultaneously pending in

24   different District Courts <u>leads to the wastefulness of time, energy and money that 1404(a) was</u>

25   <u>designed to prevent</u>.") (emphasis added); *see also Technical Concepts L.P. v. Zurn Indus.,* No. 02 C

26   5150, 2002 WL 31433408, *6 (N.D. Ill. Oct. 31, 2002).

27       Going into more detail, a court has discretion to dismiss a first-filed action in favor of a later-

28   filed action when there is "sound reason that would make it unjust or inefficient to continue the first-

1   filed action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993). One "sound

2   reason" is "the possibility of consolidation with related litigation." *Id*. Important factors to consider are

3   "conservation of judicial resources and the comprehensive disposition of litigation." *Id*.

4       Adjudicating this action in this Court would be inefficient as all of the Genentech factors listed

5   above favor transfer to Texas. For example, depositions in the earlier-filed Texas Gekko case have not

6   yet began, and discovery is open through February 4, 2008. (Kramer Decl., Exh. D.) Therefore, "the

7   possibility of [discovery] consolidation with related litigation" readily exists. *Genentech,* 998 F.2d at

8   938. Additionally "conservation of judicial resources," and "the comprehensive disposition of

9   litigation" are present only with the second-filed Texas-Action as: a) only one Judge is required to

10  become familiar with the relevant technology; b) only one Judge would construe the claims of patents

11  on related technology; and c) Swit's Texas-based U.S. distributor is already a co-defendant party in the

12  Texas action, and is not a party in this action.

13      Accordingly, the Court should exercise its discretion to transfer Swit's declaratory judgment

14  action, or dismiss it. *See Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1208 (E.D. Mo. 1985)

15  (dismissing declaratory judgment action in one forum when it was not clear that the forum could

16  resolve the entire controversy but it was clear that the other forum could).

17  **H.      No Case In Controversy Regarding U.S. Patent No. 7,140,742.**

18      Defendants are not accusing Swit's S2000 or S2010 light product of infringing U.S. Patent No.

19  7,140,742. In its Eastern District of Texas complaint, Defendants did not accuse Swit of intriguing the

20  '742 patent. *See* Declaration of Ken Fisher dated July 20, 2007, ¶4. In its Motion to Dismiss or

21  Transfer filed June 15, 2007, Litepanels, LLC made it clear that it will not assert the '742 patent

22  against Swit. Accordingly, there is no actual and justiciable controversy between Swit and Litepanels

23  concerning U.S. Patent No. 7,140,742. Swit's declaratory judgment claim that this patent is not

24  infringed and is invalid should therefore be dismissed. *See Super Sack Mfg. Corp. v. Chase Packaging*

25  *Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) (holding that a declaratory judgment action was mooted by

26  plaintiff's promise not to sue), *see also Intellectual Prop. Dev. Inc. v. TCI Cablevision of Calif. Inc.*,

27  246 F.3d 1333 (Fed. Cir. 2001).

28

1  **V.    CONCLUSION**

2      The Court should dismiss this action for improper venue pursuant to Federal Rules of Civil

3  Procedure 12(b)(3) and/or 12(b)(6).  In the alternative, the Court should transfer this action to the

4  Eastern District of Texas pursuant to 28 U.S.C. §§ 1404 or 1406.

5      The electronic filer hereby attests that the individual whose name appears has signed this

6  document.  See General Order 45, Section X.

7

8  Dated:  August 2, 2007                        Respectfully submitted,

9                                                     HOWREY LLP

10

11                                          By:   /s/ Robert F. Kramer_____

12                                                     Robert F. Kramer

13                                                     Attorneys for Defendant
                                                   LITEPANELS, LLC and LITEPANELS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOWREY LLP**

Case No. C-07-02645 JSW            -17-
DEFENDANTS' RENEWED MOTION TO DISMISS OR
TRANSFER VENUE